KARL B. LEABO ET AL. *v.* STEVEN LENINSKI ET AL.
(2433)

HULL, BORDEN and SPALLONE, Js.

---

Argued October 3—decision released November 27, 1984

*Peter C. Barrett,* for the appellant-appellee (named defendant).

*Gordon A. Evans,* with whom, on the brief, was *Richard H. Lamere,* for the appellees-appellants (plaintiffs).

BORDEN, J. This is a suit to quiet title to a private road known as Walden Hill Road, in Guilford, in which the plaintiffs also sought injunctive relief and damages.

The trial court rendered a judgment declaring that the plaintiffs have a right of way over Walden Hill Road and awarding them exemplary damages. The defendant Steven Leninski,[1] who owns the fee to the road, appeals[2] from this judgment, and the plaintiffs, who are owners of lots abutting the road, cross appeal.

This case is a subsequent chapter of what the trial court described as a long and bitter feud between the plaintiff Karl B. Leabo and the defendant, which has already resulted in one Supreme Court decision. *Leabo v. Leninski*, 182 Conn. 611, 438 A.2d 1153 (1981). Some of the facts of that case are pertinent here. In 1959, the Guilford zoning commission approved a subdivision plan of certain property owned by the estate of George T. Sperry located in the Sachem's Head section of Guilford. The subdivision consisted of six lots situated north of Falcon Road and a small piece of rocky shore, known as the "Second Piece," located south of Falcon Road. Falcon Road runs east and west along the beach on Long Island Sound and west of Walden Hill Road. The estate also owned additional property not included in the subdivision plan. That property consisted of a 2.23 acre parcel located on the east side of Walden Hill Road and a small beach, approximately 1300 square feet in area, located south of Falcon Road and east of the "Second Piece." *Leabo v. Leninski,* supra, 612.

The trial court here found the following facts, which are not disputed in this appeal: The estate sold the six lots, Walden Hill Road and the "Second Piece" to Falcon, Inc. Falcon, Inc., conveyed the six lots and the "Second Piece" to the plaintiffs or their predecessors in interest. Each deed granted the owners rights to the beach and conveyed a right of way "for all purposes

---

[1] Although other interested parties were named as defendants in the trial court, only Leninski appealed. We therefore refer to him as the defendant.

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

whatsoever, over, upon, through and across Walden Hill Road." All successive deeds reconveying the lots granted a similar right of way to Walden Hill Road. Walden Hill Road is fifty feet wide but only the middle twenty feet are paved and used as a traveled way by the lot owners. "Tree lawns" were planted on the unpaved portions of the road by the lot owners, who maintained those areas and the paved portion of the road.

In 1975, Leabo learned that the Sperry estate's remaining land in the area, including the 2.23 acre parcel adjoining Walden Hill Road and the small beach to the southeast of the road, was for sale. Leabo consulted with his attorney and with the Sachem's Head Association, the local zoning authority; both advised him that conversion of the four summer cottages on the 2.23 acre lot to year-round use would violate existing zoning ordinances. After hearing that the defendant was interested in purchasing the property and winterizing the four summer cottages, Leabo had his attorney send the defendant a letter advising him that such a conversion would be in violation of the zoning ordinances and that Leabo would oppose it.

Three days later, the defendant purchased the 2.23 acre lot and small beach. His deed made his rights to the beach subservient to those of the other lot owners and granted him an easement to use the road similar to that granted to the plaintiffs or their predecessors in interest.

The defendant's actions following his purchase of the property have been the subject of prior litigation. See *Leabo* v. *Leninski,* supra; *Zoning Commission* v. *Leninski,* 34 Conn. Sup. 66, 376 A.2d 771 (1976). He began to convert a three car garage on the ground floor of one of the cottages into an apartment and was ordered to stop by the local zoning authority and the

court. After he refused to stop, he was held in contempt and ordered to undo the conversion.

Angered by the court order, he began a campaign of retaliation and malicious harassment against Leabo. He painted a cottage which was directly across from Leabo's property red, white and blue so that it resembled a crude version of the American flag; he erected two large wooden crosses, one in front of the painted cottage and the second on a hill directly across from Leabo's home; further, he posted a crude, oversized, homemade sign proclaiming the beach open to the public. Successful suits were brought by Leabo and other lot owners defining their beach rights and enjoining the posting of signs. See *Leabo* v. *Leninski,* supra; *Zoning Commission* v. *Leninski,* supra. This suit focuses on the plaintiffs' rights in Walden Hill Road, which the defendant subsequently purchased.

After purchasing Walden Hill Road, the defendant cut down the trees on some of the tree lawns to make room for the hundreds of cars and bicycles he expected after declaring the beach to be public. When Leabo continued to mow the tree lawn in front of his home, but within the defendant's roadway, the defendant called the police and had his attorney demand that Leabo cease his actions.

The defendant then proceeded to heap debris on the tree lawns. Leabo continued to remove the debris even after the defendant again called the police to order Leabo to stop. Thereafter, the defendant dug up the tree lawn in front of Leabo's home. Ultimately, the defendant brought in heavy construction equipment and placed boulders on the tree lawn in front of the plaintiffs' homes. The defendant himself placed some of the large boulders in front of Leabo's home, interfering with Leabo's access to his mailbox and to the entrance of his home.

The plaintiffs brought this suit to quiet title under General Statutes § 47-31, and for other relief, naming as defendants Leninski and other lot owners who were interested parties. See footnote 1, supra. The complaint claimed, inter alia, adverse possession of the road, sought a determination of the rights of the parties to the road, and requested injunctive and monetary relief. The court concluded that the plaintiffs failed to prove title to the road by adverse possession but that they had an absolute right to make use of the traveled portion as well as the untraveled portion of Walden Hill Road, and that the defendant wilfully, wrongfully and unreasonably interfered with that right. The court further found that the defendant deliberately and maliciously interfered with the rights of the plaintiffs, especially Leabo, to the enjoyment of their homes, and that the Leabos bore the brunt of the defendant's malicious harassment, causing Leabo to suffer great mental anguish, inconvenience and expense. The court awarded all the plaintiffs exemplary damages of $13,541.10, on the basis of their legal expenses, but declined to award compensatory damages.

## I

### THE APPEAL

The defendant first argues that interference with the plaintiffs' rights of way was not pleaded as a theory of recovery and that the court, therefore, erroneously based its decision on this theory. The plaintiffs' complaint was in four counts, which the defendant suggests should be strictly construed as making only two claims of adverse possession and two claims of trespass, and as not claiming interference with rights of way. We disagree.

A formalistic or highly technical construction of pleadings is contrary to a proper view of pleading requirements. *O'Brien* v. *Seyer*, 183 Conn. 199, 210–11,

439 A.2d 292 (1981). "[S]light linguistic ambiguity" does not serve to nullify a cause of action which is sufficiently raised to notify the defendant of its existence. *Schenck* v. *Pelkey,* 176 Conn. 245, 255, 405 A.2d 665 (1978); *Buckley* v. *Lovallo,* 2 Conn. App. 579, 587, 481 A.2d 1286 (1984). "Justice is not served by accepting a claim of variance [between allegations and proof] from a party who at all times has been in a position of knowing the true state of facts." *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 67, 221 A.2d 263 (1966).

The first two counts of the complaint incorporate into the pleadings the deeds which conveyed the respective lots to each plaintiff. These deeds, which were attached to the complaint, recited the rights of way granted with the lots. Both the third and fourth counts state in part that the "plaintiffs have had their access to the paved portion of Walden Hill Road *and their right of way* restricted . . . ." (Emphasis added.) In conjunction with these allegations, the plaintiffs' claim for relief requested, inter alia, that the defendant be enjoined from further interference with "plaintiffs' access to the paved portion of Walden Hill Road *and plaintiffs' right of way* . . . ." (Emphasis added.)

Construing these allegations favorably to the pleaders; *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 69, 381 A.2d 559 (1977); we conclude that they gave sufficient notice to the defendant that the plaintiffs were proceeding on the theory of interference with deeded rights of way as well as the theory of adverse possession of the road. Under these pleadings, the plaintiffs were not required to abandon one theory of recovery in order to pursue another.

The defendant also argues that the court erred in including certain attorney's fees in the exemplary damages award because the plaintiff did not prove them by evidence. The plaintiffs introduced into evidence a

bill for legal services in the amount of $11,041.10, which the court used as a basis for the exemplary damages award. The court awarded an additional $2500, however, for services not reflected in the bill but rendered in preparation for the trial, during the trial and in preparing the plaintiffs' post-trial brief. The time spent on these activities was not the subject of evidence during the trial, but was asserted in the plaintiffs' post-trial brief to the court, which assertion the court accepted. The defendant does not dispute the $11,041.10 awarded, but he does dispute the propriety of the additional $2500 and urges that the award be decreased by that amount. We agree that this additional amount was improperly awarded, and we remand for a proper determination of the exemplary damages award.

Exemplary damages[3] are limited to the amount which compensates the plaintiff for the expenses of litigation less taxable costs. *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 127, 222 A.2d 220 (1966). Although contract damages may be based on the court's general knowledge of the time involved in litigation and reasonable fees charged by attorneys; *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310–11, 476 A.2d 572 (1984); *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 681, 443 A.2d 486 (1982); *Piantedosi* v. *Floridia,* 186 Conn. 275, 279, 440 A.2d 977 (1982); a different evidentiary standard is used in the determination of exemplary damages. *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 245, 440 A.2d 306 (1982); *Wedig* v. *Brinster,* 1 Conn. App. 123, 134 n.5, 469 A.2d 783 (1983). "[F]or an award of punitive damages, it is essential that evidence of the cost of the litigation of the case being tried must be offered." *Vandersluis* v. *Weil,* 176 Conn. 353, 359, 407

---

[3] The terms "punitive damages" and "exemplary damages" are "merely alternate labels for the same remedy" and no distinction exists between them. (Footnote omitted.) *Alaimo* v. *Royer,* 188 Conn. 36, 42–43, 448 A.2d 207 (1982)

A.2d 982 (1978); *Yavis* v. *Sullivan,* 137 Conn. 253, 261, 76 A.2d 99 (1950) (no punitive damages recoverable because no evidence of cost of litigation offered); *Wedig* v. *Brinster,* supra, 134 (evidence properly introduced to establish punitive damages).

The bill for $11,041.10 was properly offered into evidence and used to determine damages. From this exhibit, the court had evidence of the reasonable hourly rate of the plaintiffs' counsel. Additionally, the court knew of counsel's activities during the trial and the length of the trial. Fees for the conduct of the trial would have been permissibly assessed based on the hourly rate and the length of the trial. See *Hoenig* v. *Lubetkin,* 137 Conn. 516, 525, 79 A.2d 278 (1951). The court, however, went beyond its bounds when it awarded fees for trial preparation and preparation of the post-trial brief without evidence[4] or personal knowledge of those items. This was error. Because the lump sum of $2500 was awarded for the pretrial, trial and post-trial activities, it is impossible for us to allocate the award among those three elements. A remand is appropriate, therefore, for a rehearing on this portion of the award.

Finally, the defendant claims that exemplary damages were erroneously awarded to all of the plaintiffs. He argues that, because the record supports a finding of malice only toward the plaintiff Leabo, exemplary damages should only have been awarded in the amount of the attorney's fees attributable to representation of Leabo. We disagree.

"Punitive [or exemplary] damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those

---

[4] The plaintiffs could easily have introduced evidence of the time spent in preparation for the trial. As to the post-trial brief, they could have introduced evidence of a reasonable estimate and requested permission to open their case if that estimate proved substantially inaccurate.

rights." *Alaimo* v. *Royer,* 188 Conn. 36, 42, 448 A.2d 207 (1982), quoting *Vandersluis* v. *Weil,* supra. Such damages are designed to compensate plaintiffs for their injuries and not to punish defendants for their offenses. *Miller* v. *Drouin,* 183 Conn. 189, 190, 438 A.2d 863 (1981). The court found that the defendant's conduct clearly established a pattern of malicious and wanton misconduct. He displayed a wanton disregard of *all* the plaintiffs' rights, although his malice was aimed at Leabo. "[A]n actual intention to do harm to the plaintiffs is not necessary" for an award of exemplary damages if the defendant acts in reckless disregard of the results he knew or should have known would affect the plaintiffs. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 490, 234 A.2d 825 (1967).

The court found that all the plaintiffs had been injured to some extent, but that the Leabos bore the brunt of the malicious harassment by the defendant. It found that justice and equity require that the plaintiffs, especially Leabo, be compensated by the defendant "for the damages suffered because of Mr. Leninski's malicious and wilful conduct toward *them* and for his intentional disruption of *their* enjoyment of *their* property rights." (Emphasis added.) The defendant cannot complain that not all the plaintiffs should receive exemplary damages solely because he meant to injure only one and injured the others only incidentally. This court will not retry the facts or disturb the findings of malice and injury by the trial court; *Kelsey* v. *Connecticut State Employees Assn.,* 179 Conn. 606, 615, 427 A.2d 420 (1980); *Hobby* v. *Feldman,* 2 Conn. App. 696, 697, 482 A.2d 1226 (1984); and we will not upset the exemplary damages award warranted by those findings.

## II

### THE CROSS APPEAL

The first claim in the plaintiffs' cross appeal is that the court erred in limiting recovery to exemplary

damages and, thus, in failing to award compensatory damages for mental anguish, invasion of privacy and diminution of property values. The court read the complaint as one for exemplary damages only, which are limited to the costs of litigation less taxable costs. *Wedig* v. *Brinster,* supra, 134. It also ruled that, even if this limitation on its award were not observed, it would limit its award of damages accordingly because of the difficulty of placing a monetary figure on the compensatory damages claimed. We agree that, as to Leabo only, the court erred in limiting its award to exemplary damages.

Although the cross appeal was taken by all the plaintiffs, and although evidence of liability was offered with respect to them, it is clear from our examination of the briefs and transcript that evidence of damages for mental anguish and invasion of privacy was offered only with respect to Leabo. Thus, only he can be said to have proved any such damages. The other plaintiffs may also have technically and legally suffered those injuries. Even if that is the case, they are only entitled to nominal damages and this court will not ordinarily reverse and grant a new trial merely for the failure to award nominal damages. *Rubin* v. *Rios,* 186 Conn. 754, 756, 443 A.2d 1273 (1982); *Preisner* v. *Illman,* 1 Conn. App. 264, 269, 470 A.2d 1237 (1984); but see *Kelly* v. *Ivler,* 187 Conn. 31, 450 A.2d 817 (1982) (remanded for rendition of judgment of nominal damages). We therefore affirm that part of the trial court's judgment denying compensatory damages for mental anguish and invasion of privacy to the other plaintiffs, on the alternative theory that no evidence of such damages was offered with respect to them. See *State* v. *Beckenbach,* 1 Conn. App. 669, 673 n.4, 476 A.2d 591, cert. granted, 193 Conn. 806, 477 A.2d 659 (1984).

As to Leabo, the complaint adequately pleaded a cause of action for compensatory, as well as exem-

plary, damages arising from the defendant's conduct. It alleged that his tortious conduct was performed "wilfully, wantonly and maliciously," and that the "[p]laintiffs in this action have been caused great inconvenience, expense, damage and mental suffering by said acts of . . . Leninski . . . ."

Leabo established this cause of action. The court specifically found that he "conclusively proved, that . . . Leninski, by a course of deliberate and intentionally harrassing conduct extending over a period of many months, wilfully and maliciously interfered with Leabo's enjoyment of his property and caused him great mental anguish, inconvenience and expense." This finding, which the evidence supports, necessarily triggered not only an award of exemplary damages, but also an inquiry into the amount of compensatory damages to be awarded for that mental anguish, inconvenience and expense.

A fair reading of the court's memorandum of decision indicates that it declined to award such compensatory damages, not because of a failure of proof by Leabo, but because of the difficulty of arriving at a monetary figure for them. This was error.

It is axiomatic that the plaintiff who establishes tort liability is entitled to fair, just and reasonable compensation for his injuries. *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983); *Hulk* v. *Aishberg,* 126 Conn. 360, 362, 11 A.2d 380 (1940). "Damages in personal injury cases cannot be computed mathematically, nor does the law furnish any precise, definite rule for their assessment." *Sadonis* v. *Govan,* 132 Conn. 668, 670, 46 A.2d 895 (1946); *Conaway* v. *Prestia,* 191 Conn. 484, 494, 464 A.2d 847 (1983). The court has, and must exercise, a wide discretion in the amount of damages for personal injuries, and the amount awarded in each case depends largely on the judgment of the trier. *Johnson*

v. *Flammia,* 169 Conn. 491, 500, 363 A.2d 1048 (1975). "That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established." *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 420, 446 A.2d 799 (1982); *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928). The fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery; *Sadonis* v. *Govan,* supra, 670; see also *Doeltz* v. *Longshore, Inc.,* 126 Conn. 597, 600, 13 A.2d 505 (1940); as long as there is a reasonable basis in the evidence for that recovery. *Conaway* v. *Prestia,* supra, 494.

These same principles apply here where the injury proven was mental and emotional, rather than physical. "Medical science and mental health fields have advanced sufficiently to enable a trier of fact to determine the extent of mental suffering by the same standard of proof as physical suffering. See *Wallace* v. *Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117, 121 (Me. 1970). In today's world, both supply equal grist for the [trial court's] mill, based on '[t]he ordinary knowledge acquired from everyday experience by the [trial court] . . . .' Id., 122." *Buckley* v. *Lovallo,* 2 Conn. App. 579, 589, 481 A.2d 1286 (1984). Here, there was evidence that, as a result of the defendant's conduct, Leabo and his family felt compelled to go elsewhere during the summertime rather than stay at their home in Sachem's Head, and that there was tension and strain in the family. There was also evidence that the defendant's conduct contributed to a divorce between Leabo and his wife. The court also found that the second cross erected by the defendant was intended specifically to harass the Leabo family, that he knew that the Leabos were Jewish, and that from time to time he would shout anti-Jewish epithets at Leabo. This evidence and these findings, together with the reasonable inferences which

could have been drawn about the natural effect of the defendant's conduct on its target, provided a sufficient basis for an award of compensatory damages.

The same cannot be said, however, of the plaintiffs' additional claim on the cross appeal, namely that the court erred in failing to award damages for diminution of property values. As all the plaintiffs, including Leabo, conceded in oral argument in this court, there was no evidence of such a diminution. Although the trial court did not decline to award these damages on that basis, "we are free to sustain a trial court's judgment on a theory different from that adopted by it . . . ." *State* v. *Beckenbach*, supra, 673 n.4. Because of the absence of such evidence, we find no error in that part of the trial court's judgment which denied damages for diminution of the values of the plaintiffs' properties.

The plaintiffs' final claim is that the court erred in failing either to order the defendant to remove the boulders or to award damages for the cost of their removal. The defendant responds that we should not review this claim because the plaintiffs did not include it in their preliminary statement of issues under Practice Book § 3012 (a). We agree.

The plaintiffs' preliminary statement of issues is confined to their claims involving the court's failure to award compensatory damages for mental anguish, invasion of privacy and diminution of property values. It does not refer to the claim of which they now seek review. Since this claim does not involve a constitutional issue and does not rise to the level of plain error or a miscarriage of justice,[5] and since the defendant urges compliance with the rule, we decline to consider it. *Barrett* v. *Central Vermont Railway, Inc.*, 2 Conn. App. 530, 535–36, 480 A.2d 589 (1984).

---

[5] We note that the plaintiffs did not offer evidence of the cost of removal of the boulders or suggest that they could not remove them.

There is error in part on the appeal and on the cross appeal, the judgment is set aside and the case is remanded for a new hearing limited to a determination of that portion of the exemplary damages of the plaintiffs arising from preparation for the trial, the trial itself and preparation of the post-trial brief, and to a determination of compensatory damages for mental anguish and invasion of privacy suffered by the plaintiff Karl B. Leabo only.

In this opinion the other judges concurred.