[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was brought by the plaintiff's predecessor to enjoin interference with an easement for ingress and egress claimed by it over "Crane Avenue," a private street in the Town of Norwich. The defendants who own premises abutting the plaintiffs, and the fee under Crane Avenue, dispute the existence, nature and extent of the easement, and, by way of counterclaim, seek to enjoin the plaintiff and its customers from using all of Crane Avenue except a portion on the westerly side, which they concede the plaintiff has a right to use. The case was referred to Attorney Eugene C. Cushman, Attorney Trial Referee, pursuant to Practice Book Section 428, et seq.; General Statutes52-434 (a)(4).
The Attorney Trial Referee filed his report, heard motions to correct his report, granted said motions in part, and filed a corrected report. Both parties have filed exceptions to said corrected report upon which this Court held a hearing. The Court directed the parties to file supplemental briefs, and granted the plaintiff's motion to substitute the present plaintiff, a successor in interest to the plaintiff's predecessor.
I. CT Page 1607
The Court has reviewed the report and corrected report of the Attorney Trial Referee, the briefs and supplemental briefs of the parties, the exhibits and the transcripts of evidence.
The Trial Referee concluded that the plaintiff obtained an easement of right of way by prescription over "Crane Avenue" as it abuts the plaintiff's property on West Main Street, Norwich, from West Main Street to its parking lot at the rear of its property. The Court agrees that the plaintiff has obtained an easement of right of way over "Crane Avenue" as found by the Trial Referee, but disagrees with his conclusion of law as to the manner of its creation.
At this juncture, it would be helpful to briefly analyze the respective functions of the referee and the court. The rules of practice governing references to committees are applicable to attorney trial referees. Practice Book Section 428, et seq. The referee is required to report to the Court the facts found and the conclusions drawn therefrom, Practice Book Section 434. The function of the court is to render such judgment as the law requires upon the facts in the report as it may be corrected. Practice Book Section 443. The court, while unable to substitute its judgment with respect to any subordinate fact found by the referee, may correct a finding of fact if found without evidence, or if the referee has failed to find an admitted or undisputed fact or has found a fact in doubtful language, and may correct the referee's conclusions of law. Practice Book Section 439; Section 443. "The views of a committee upon the law carry no more force than those of the parties in their arguments at the hearing before the court that is to enter judgment (citations omitted). . . .The reviewing court is the effective arbiter of the law and the legal opinions of a committee, like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496,510 (1986).
The Trial Referee found the following material, subordinate facts, none of which the parties objected to nor excepted to. The parties' common grantor in the chain of title, Charles A. Rathboner owned the properties now owned by the parties, together with some other lots and the private street, "Proposed Crane Avenue," at the time Rathbone conveyed the parcels ultimately obtained by the plaintiff in 1964. Referee's Finding No. 1, which incorporated a stipulation of facts. The deeds from Rathbone of the property now owned by the plaintiff, in 1923, all referred to the lots on the "Rathbone Plan." Exhibit B, Referee Finding No. 1. Crane CT Page 1608 Avenue is the private street shown on Exhibit B, and was also shown on a previous plan of building lots for sale by one Stephen Crane. Exhibit C, the "Crane Plan." Said private street was approved by the Court of Common Council of the City of Norwich about 1901-1902. Referee's Finding No. 3.
This approval was obtained pursuant to Chapter 205, Section 1 of the 1899 Public Acts which provided in pertinent part, "No person. . .excepting municipal corporations shall hereafter lay out any street or highway in this state less than three rods in width, (approx. 49.5 feet) unless with the prior written approval of the . . . common council of the town as herein such street or highway is located."
Also, a deed from Charles A. Rathbone of a large portion of the property presently owned by the plaintiff, included a right of way appurtenant to Lot 15, over Lot 14 to the "proposed Crane Avenue." Exhibit M. The Trial Referee also found that "from roughly 1947 when the defendants constructed their house, the defendants used Crane Avenue as a common driveway, using it jointly with the owners of the houses on the plaintiff's land and owners of property on the easterly side of Crane Avenue, and said Crane Avenue had been so used since at least 1923." (emphasis supplied) Referee's Finding No. 2 (incorporating plaintiff's proposed finding No. 23.). The Trial Referee also found that "Crane Avenue," so-called, is a private street, and appears on said Crane and Rathbone Plans, Exhibits B and C, forming the easterly boundary of said lots 12, 13 and 14. Referee Finding No. 2 (incorporating Stipulation of Facts, No. 6). The Trial Referee further found that the right to use Crane Avenue to its full forty-foot width and its full length from West Main Street to the plaintiff's north property line is a substantial benefit to the plaintiff, and the plaintiff would suffer injury by its impairment or deprivation. Referee's Order, dated October 15, 1990, No. 1.
A close reading of these subordinate facts found by the Trial Referee are dispositive of the issue of the manner in which the plaintiff's easement was created, and its nature and extent.
It has been well settled that ". . . when reference to a map is made in the deed which conveys a lot and that map delineates roadways, even though there is no express easement granted, in certain circumstances, "the lot owners acquire the streets and highways thereafter kept open for use in connection with their lands." Stankiewicz v. Miami Beach Assn., Inc., 191 Conn. 165, 169 (1983), citing Whitton v. Clark, 112 Conn. 28 (1930). In Whitton, supra, the court held CT Page 1609 that when an owner of land caused a map to be made of it upon which were delineated streets for access to the lots, and then sells the lots with reference to the map, the lot owners acquire the right to use the streets. The court, in Whitton, then went on to hold that the extent to which a lot owner can claim the streets on the map are open to his use depends on the benefit conferred by the use of the streets, or the injury suffered by him were the lot owner to be deprived of such use. Whitton, supra, 33-34.
The lot owner's right to use the streets is created even if, at the time of the transfer of title, the delineated roadways are not developed. In this regard, the Trial Referee, although not making any finding as to the extent of development of "Crane Avenue," specifically found that it had been in use as a common driveway by adjoining lot owners, including plaintiff's predecessors in title, at least since 1923. The nature of the right therefore obtained by a lot owner is that of an implied easement over the street on the map beneficial to the use and enjoyment of the lot. The Court therefore concludes that the facts found by the Trial Referee compel a finding that the plaintiff's right to use the entire width of Crane Avenue from West Main Street to its northerly boundary is an implied easement and not one created by prescription.
The defendants principally argue that since Rathbone was the owner of the entire parcel, including Crane Avenue, any easement, if it existed, would be extinguished by a merger. This principle is inapposite here, because of the apparent use of Crane Avenue, and Rathbone's intent as gleaned from his map delineating the street, his retention of other parcels to the rear of the parcels sold to the plaintiff's predecessors, and the use of Crane Avenue as a common driveway, since at least 1923.
The defendants secondarily argue that because the reference was to "Proposed Crane Avenue," there could be no intention to create an easement in the plaintiff's predecessors in title. The short answer to this assertion is that the word "proposed" means, "to offer or suggest for consideration, to intend." Random House Dictionary of the English Language, Unabridged Edition, p. 1153. The approval of Crane Avenue by the Town of Norwich, the prior recording of the "Crane Map" showing Crane Avenue in the same place as it is now, the use of Crane Avenue, as a common driveway, and the reference to a right of way to Crane Avenue over lot 15 in one of the Rathbone deeds, when taken together with the "Rathbone" map clearly evidence Rathbone's intention that Crane Avenue was to be and remain an easement for right of way purposes. CT Page 1610
The defendants also point out that the Rathbone map was not recorded until long after Rathbone conveyed title to the properties plaintiff now owns and therefore, no easement could have been created. The defendants cited Stankiewicz, supra, at page 171, as authority for the general proposition ". . . that the land records should be the oracle of title on which a bona fide purchaser might rely . . ." in support of this assertion. Their reliance is misplaced. The court in Stankiewicz, while reaffirming Whitton, supra, merely held that, "An implied easement (roads on a map) may exist only, if at all, when the grantor owns the fee to the roadways and makes reference in the grantee's deed to a map which depicts the roadways," (at the time of transfer of title) id. at 171. The actual holding of Stankiewicz is on all fours with the case here. Moreover, when the defendants themselves took title, the Rathbone map was recorded and they took full notice and knowledge of Crane Avenue as it was shown on the map, its approval by the Town of Norwich and the usage made of it as a common driveway at the time. Because the Court finds that the plaintiff's right of way is an implied easement, it is unnecessary to discuss defendants' claim that the facts found by the referee do not support a conclusion that the plaintiff obtained a right of way by prescription.
 II.
The second issue dividing the parties concerns the Trial Referee's finding that the defendants expended $9,024 in attorney's fees on the case and his consequent recommendation that the defendants be awarded $9,024 in punitive damages. The defendants, in their motion to correct the finding, point to their estimate of $17,630.78 in attorney's fees, which included pretrial representation of $9,024, the balance being for trial and post-trial representation. The Trial Referee denied paragraph 7 of the motion "without prejudice," and the defendants excepted and now seek an award of $13,179.09 in attorney's fees in addition to the $9,024 recommended by the referee for a total of $22,203.09, which sum includes attorney's fees expended in post trial briefs, the preparation of proposed findings, motions and the like. This denial is inconsistent with the Trial Referee's unrestricted denial of paragraph 8c of the defendants' motion to correct which essentially requests the same correction. The plaintiff argues that punitive damages were not justified to begin with, but even if the $9,024 were justified, the defendants are not entitled to any additional attorney's fees because they had an opportunity to offer evidence of the same before the Trial Referee and did not do so. The defendants did, however, in their proposed findings of fact and post-trial brief provide CT Page 1611 an estimate of trial and post-trial attorney's fees to the Trial Referee.
Exemplary damages are limited to the amount which compensates the plaintiff for the expenses of litigation less taxable costs. Triangle Sheet Metal Works, Inc. v. Silver,154 Conn. 116, 127 (1966). The terms "exemplary damages" and "punitive damages" mean the same remedy. See Alaimo v. Royer,188 Conn. 36, 42-43 (1982).
Although contract damages may be based on the court's general knowledge of the time involved in litigation and reasonable fees charged by lawyers; Appliance, Inc. v. Yost, 186 Conn. 275, 279 (1982); a different evidentiary standard is required in the determination of exemplary damages. Leabo v. Leminski, 2 Conn. App. 715, 722 (1984). The Court agrees with the plaintiff that for an award of punitive damages, it is essential that evidence of the cost of litigation of the case being tried must be offered. Leabo, supra, 722. No such evidence was offered to the Trial Referee of the cost of the post-trial proceedings, and therefore the Trial Referee was correct in declining to determine a reasonable attorney's fee for this element. The Trial Referee knew of counsel's activities during the trial and of the length of the trial and could have, in his discretion, determined a reasonable attorney's fee for this element. Leabo, supra, 723. This the Referee also declined to do, but his rulings on the defendants' motion to correct without an accompanying memorandum of decision which could have been provided pursuant to Practice Book Section 434, require a remand to the Referee for a rehearing on the issue of the costs of litigation. This is required because such a hearing can only be held before the trier of facts. "The extent to which exemplary damages are to be awarded ordinarily rests in the discretion of the trier of the facts." Kenny v. Civil Service Commission, 197 Conn. 270, 277 (1985).
The plaintiff claims that as the plaintiff was successful on the complaint and the defendants were only successful on the counterclaim, the Referee erred when he determined that the defendants' expense of $9,024 for attorney's fees for the entire litigation should be awarded as punitive damages. The plaintiff further points out that this would be especially inappropriate because a substantial portion of the attorney's fees were expended in an unsuccessful defense of the plaintiff's claim. Neither the parties' research nor the Court's have revealed any case precisely on this issue. However, a starting point is the well settled `American Rule' adopted in Connecticut; that is, in the absence of statute or contract, each party must pay its CT Page 1612 own attorney's fees. Gionfriddo v. Avis Rent A Car System, Inc., 193 Conn. 135, 140.
This rule was applied in the context of an action for indemnification, where the court held that an indemnitee may recover only those fees incurred in defending the claim for which it is entitled to indemnification. Gino's Pizza of East Hartford, Inc. v. Kaplan, 193 Conn. 135, 140-141 (1984). The court there disallowed recovery to a successful indemnitee for a portion of the attorney's fees in other claims involved in the same litigation, but not within the defense of the claim entitled to indemnification. Although the court in Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172,195 (1986), rejected a challenge that an award of attorney's fees pursuant to the Connecticut Uniform Securities Act (CUSA) should be apportioned and reduced because the plaintiff succeeded on three of five counts and was unsuccessful on the other two, that case is distinguished from the case here for two reasons. First, the Russell court held that the purpose of the (CUSA) statute was to encourage its enforcement by victims of improper securities transactions who might not otherwise be able to afford to do so." "(The statute) reflects a legislative recognition that suits under CUSA are often long, complex and prohibitively expensive for individual investors." Russell v. Dean Witter, supra, 196.
Secondly, in this case the plaintiff prevailed on its claim for affirmative relief against the defendants, which fact was not present in the Russell case. The Court has turned for guidance to a line of federal cases[1] involving attorney's fees awards to partly successful, partly unsuccessful, plaintiffs in civil rights cases. Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. Sec. 1988. These precedents, while useful, are not controlling here, and are distinguished for similar reasons as in Russell v. Dean Witter, supra.
Accordingly, this Court sees no reason to depart from the `American Rule' in this case, and holds that the defendants' exemplary damages should be determined by the cost of litigation allocated to their successful counterclaim. The Court also points out that the $200 for engineering fees and the $263 expended for a title search were not proven to be actual damages sustained by the defendants, but seem to more properly be costs of litigation and the Referee's report is corrected to reflect this.
Accordingly, the Referee's report is corrected as previously set out herein and the case is remanded to the Attorney Trial Referee for a redetermination of the defendants' attorney's fees and resultant recommendation of CT Page 1613 punitive damages consistent with this opinion. The other corrections sought by the parties are not material in the view this Court takes of the case, and their remaining exceptions are overruled.
Accordingly, partial judgment is entered accepting the Attorney Trial Referee's corrected report in part, and it is ordered:
(1) That judgment shall enter on the plaintiff's complaint that the plaintiff has an implied easement of right of way over the entire width of "Crane Avenue" appurtenant to its property on West Main Street, Norwich, Connecticut, from West Main Street to an imaginary line across "Crane Avenue" extended from plaintiff's northerly boundary line.
(2) That the defendants, their agents, employees, and/or contractors are permanently enjoined from interfering with the plaintiff's use and enjoyment of its right of way over "Crane Avenue" between West Main Street and said imaginary line across "Crane Avenue" extended from plaintiff's northerly boundary line.
(3) That judgment shall enter on the defendants' counterclaim that the plaintiffs, their agents, employees and/or contractors are permanently enjoined from interfering with defendants' use and enjoyment of "Crane Avenue" and their fee ownership therein; the plaintiff is specifically ordered to take prompt remedial action to insure that its customers shall not block "Crane Avenue," so as to unreasonably delay or impede defendants, or their tenants or visitors from access to their property.
(4) That the plaintiff and the defendants are permanently enjoined from placing or erecting any permanent object or structure within the above stated area of "Crane Avenue" constituting the plaintiff's easement.
(5) Judgment shall enter on the defendants' counterclaim that the defendants shall recover from the plaintiff compensatory damages of $234.38.
Taxable costs are awarded to the plaintiff on the complaint and to the defendants on the counterclaim.
TELLER, JUDGE.