[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present case arises from an alleged assault involving the plaintiff, Eric Murphy, and the defendants, Robert LaChapell, Kathy Parizo and Jennifer Parizo. The complaint alleges that during the evening of June 14, 1997 and the early morning hours of June 15, 1997, the plaintiff and LaChapell were invitees at a party hosted by Jennifer Parizo at 6 Dellwood Road, Wolcott, Connecticut, a residence owned by Cathy Parizo.[1]
The complaint alleges that LaChapell approached the plaintiff and assaulted him. It further asserts that as a result of that assault the plaintiff suffered, inter alia, a fractured jaw requiring surgery and the removal of a tooth with substantial pain and suffering. The plaintiff seeks as damages both compensatory and punitive damages. LaChapell, in his answer dated December 2, 1997, plead self-defense and contributory negligence. A trial was held on June 30, 2000 and August 29, 2000. The CT Page 15589 parties introduced the sworn testimony of witnesses and numerous exhibits.
Based upon the credible evidence presented at trial, the court finds that the following facts have been proven. The plaintiff turned twenty-one on the date of the party, June 14, 1997. During the evening hours of June 14, 1997 through the early morning hours of June 15, 1997, the plaintiff attended a party at a private residence at 6 Dellwood Road, Wolcott, Connecticut owned by the Parizo family. This party was intended to be a high school graduation party for Jennifer Parizo. Alcohol was served at the party, however, Murphy did not consume any alcoholic beverages. The party was attended by less than fifty guests.
Murphy attended the party with his girlfriend, Monica Mangual. Mangual was a friend of Jennifer Parizo. Murphy arrived at the party with his cousins, Joey and Jason Demis. Also attending the party was the defendant, LaChapell. At a point in time during the early morning hours of June 15, 1997, Murphy made a decision to leave the party because, in his opinion, it had become too raucous. As he proceeded to leave, he stopped in front of the house to speak with Dan Fredericks. Murphy was standing behind Mangual with his arms around her. Murphy's two cousins were standing approximately ten feet from him. Other guests began to gather around them because they anticipated an altercation between Murphy and Fredericks. These individuals did not have a physical or verbal confrontation.
Suddenly, without warning or provocation, LaChapell came from behind Murphy and struck him with great force on his jaw behind his left ear. Murphy did not observe who assaulted him, was unable to protect or defend himself, and immediately fell to the ground. Mangual then protected Murphy until his cousins could transport him to Waterbury Hospital Health Center. The plaintiff was admitted via the emergency room on June 15, 1997 and diagnosed with multiple mandibular fractures requiring surgery to repair and return the functions of his jaw. LaChapell was subsequently arrested, prosecuted and found guilty of the crime of assault in the second degree and was incarcerated. In the hours that followed the assault, LaChapell displayed a total lack of remorse or concern for the well being of Murphy. To the contrary, he boasted to his friends of his achievement.
The surgery was performed by Dr. Thomas McKeon. Dr. McKeon is board certified in oral maxillofacial surgery. In his June 19, 1997 discharge summary report, McKeon states: "His [the plaintiff's] maxillofacial exam was significant for open displaced fracture of the left mandible with impacted #17 (wisdom tooth) in the line of fracture. Additional findings were closed, minimally displaced fracture right body of the mandible and CT Page 15590 paresthesia secondary to injury to the mandibular nerve on the left side. He also had a traumatic malocclusion. . . . On June 16, 1997 he was brought to the operating room where under general anesthesia he underwent surgical repair which included open reduction internal fixation left mandibular angle fracture, surgical removal of tooth #17, closed reduction with intermaxillary fixation of the right body fracture. The patient spent the first postoperative evening in the Intensive Care Unit." (Exhibit 16A.) The surgery took two to three hours to perform and included several incisions into Murphy's jaw and gums, removal of a wisdom tooth, insertion of a metal plate and screws to mend the fracture and installation of wire braces on his teeth. Elastic devices were fixed to the metal braces to hold his mouth closed. Murphy suffered a great deal of swelling in his face and was administered morphine for pain. He was discharged from the hospital on June 19, 1997.
The elastic devices remained in the plaintiffs mouth until July 22, 1997. (Exhibit 16A.) During this period of time he was only able to consume liquid foods and lost approximately twenty pounds. Murphy was required to wear a pair of scissors around his neck so that the elastics could be cut in the case of choking or respiratory emergency. The injury and subsequent surgery and wire device caused him physical and emotional pain and suffering including bouts of depression. Subsequent to the removal of the device, Murphy experienced difficulty opening his mouth and was limited to a diet of soft foods for several months. Murphy has a small scar on the left side of his face and continues to experience pain and discomfort. This includes frequent headaches and pain in his jaw, which causes him to have difficulty sleeping. Murphy medicates himself with over-the-counter pain relievers. He still experiences difficulty eating foods that require extensive chewing. The total amount of medical expenses incurred was $22,919.11, but of this amount $15,653.11 was paid by medical insurance coverage, leaving a balance of $7,276.00.
Immediately prior to the injury, Murphy worked for the United Van Lines Company for approximately three years. His duties included driving moving trucks and lifting furniture. Following the accident, he was unable to return to that occupation because he is unable to lift heavy objects. Murphy currently performs temporary work as a landscaper on a part-time basis, but experiences difficulty in lifting heavy objects and working in the heat.[2]
"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Internal quotation marks omitted.) Alteiri v.Colasso, 168 Conn. 329, 334, 362 A.2d 798 (1975), citing Restatement CT Page 15591 (Second), 1 Torts § 13. "[A] actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." Markey v. Santangelo, 195 Conn. 76, 78,485 A.2d 1305 (1985).
In this case, the credible evidence presented at trial demonstrates that Robert LaChapell, intentionally struck Eric Murphy, in the left side of his face. As a result of this harmful and offensive conduct, Murphy sustained personal injuries and continuing pain and suffering. Murphy has sustained his burden of proof as to count one of the amended complaint. The court further finds that LaChapell failed to prove his special defenses of self-defense and contributory negligence. Accordingly, LaChapell is liable to Murphy for intentional assault and battery.
It is axiomatic that the plaintiff who establishes tort liability is entitled to fair, just and reasonable compensation for his injuries. Herbv. Kerr, 190 Conn. 136, 139, 459 A.2d 521 (1983). "Damages in personal injury cases cannot be computed mathematically, nor does the law furnish any-precise, definite rule for their assessment." Sardonis v. Govan,132 Conn. 668, 670, 46 A.2d 895 (1946); see also Conaway v. Prestia,191 Conn. 484, 494, 464 A.2d 847 (1983).
"That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established."Griffin v. Nationwide Moving and Storage Co., 187 Conn. 405, 420,446 A.2d 799 (1982). "The fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery as long as there is a reasonable basis in the evidence for that recovery." (Citations omitted.) Leabo v. Leninski, 2 Conn. App. 715, 727, 484 A.2d 239 (1984).
"Generally, attorney's fees may not be recovered, either as costs or damages, absent contractual or statutory authorization. . . . Attorney's fees may be awarded, however, as a component of punitive damages." (Citations omitted.) Farrell v. Farrell, 36 Conn. App. 305, 311,650 A.2d 608 (1994). "Common law punitive damages cannot exceed the plaintiffs expenses of litigation, less his taxable costs. . . . Litigation expenses may include not only reasonable attorney's fees, but also any other nontaxable disbursements reasonably necessary to prosecuting the action." Berry v. Loiseau, 223 Conn. 786, 832 A.2d 414, [614 A.2d 414] (1992). "To furnish a basis for recovery of such damages, the pleadings must allege and the evidence must show wanton or wilful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." Farrell v. Farrell, supra, 36 Conn. App. 311. CT Page 15592
"This court has previously upheld punitive damages awards computed on the basis of a plaintiffs contingency fee agreement with his attorney. . . . We note, moreover, that the admission of a written fee agreement as evidence of the plaintiffs litigation expenses is in accord with Connecticut practice." (Citations omitted.) Berry v. Loiseau, supra,223 Conn. 831.
In the present matter, the pleadings sufficiently allege a claim for punitive damages. Further, the credible evidence presented demonstrates that LaChapell committed wanton or wilful malicious conduct. The plaintiffs fee agreement with his attorney was admitted as evidence for the court's consideration (Exhibit 26). This agreement is subject to General Statutes § 52-251c.
In this case, the credible evidence demonstrates that LaChapell intentionally struck Murphy in the right side of his face. As a direct and proximate result of this harmful and offensive conduct Murphy sustained personal injuries and continuing pain and suffering and medical expenses. Accordingly, the court awards Murphy the following damages which are determined to be fair, just and reasonable compensation based upon the entire record of this case.
A. Economic Damages — Outstanding Medical Expenses $7,276.00
B. Non-economic Damages — $100,000.00
 This amount is in addition to the $25,000 previously obtained in settlement of claims with other defendants.
Total compensatory damages $107,276.00
C. Punitive damages —
 The court awards Murphy reasonable attorney's fees which are calculated at thirty-three and one-third percent of the total award for compensatory damages $35,758.67. In addition, the court awards the plaintiff his expenses of litigation, less taxable costs. See General Statutes § 52-257. A review of the plaintiffs bill of costs (Exhibit 23) discloses that the only non-taxable cost listed is "Witness Fee — Officer Gary Roberts $152.00." This cost is awarded as punitive damages. The remainder of the costs listed are approved by the court as taxable costs.
Total Punitive Damages — $35,910.67
The court awards the plaintiff a total of $143,186.67 in damages.
So Ordered.
BY THE COURT
 ___________________, J. PETER EMMETT WIESE