JAMES CAMPBELL ET AL. *v.* MICHAEL GOULD
(12076)

PETERS, HEALEY, SHEA, GRILLO and MENT, Js.

Argued June 7—decision released July 24, 1984

*Zbigniew S. Rozbicki,* for the appellants (plaintiffs).

*Randy L. Cohen,* with whom was *Raymond B. Rubens,* for the appellee (defendant).

SHEA, J. At the conclusion of a trial arising out of a vehicular collision involving the plaintiffs, James Campbell and Debra Dominic, and the defendant, Michael Gould, the jury returned a verdict in the plain-

tiffs' favor and awarded Campbell $7885 in damages[1] and Dominic $39,700. Thereafter, the trial court denied the defendant's motion to set aside the verdict, but ordered a remittitur of $2885 for Campbell[2] and $9700 for Dominic. The plaintiffs have appealed, maintaining that the verdict was adequately supported by the evidence and not excessive, and that the trial court's order invaded the province of the jury.

In reaching its verdict the jury could have reasonably found the following facts: On May 19, 1979, at approximately 7:15 p.m., Campbell was operating a motorcycle, on which Dominic was also riding, in an easterly direction on Highland Avenue in Torrington. The defendant, who was operating his automobile, was proceeding in a westerly direction on Highland Avenue and, as he approached the intersection at Highland and Mt. Pleasant Terrace, turned left onto Mt. Pleasant Terrace. The defendant's car collided with the motorcycle, throwing Dominic head first to the pavement. Campbell remained with his motorcycle, sliding along the pavement until the motorcycle came to rest.

As a result of the collision, Dominic, who had a life expectancy of fifty-five years at the time of trial, suffered a concussion as well as severe abrasions on her forehead, nose, cheek, chin, and right shoulder. Gravel

---

[1] The jury found the plaintiff, Campbell, contributorily negligent for his own injuries and reduced his original damages of $8300 by 5 percent.

[2] The proper procedure for ordering a remittitur is to set aside the verdict unless the prevailing party accepts the decrease. See General Statutes § 52-228b. This statutory procedure provides the prevailing party with the option of either proceeding with a new trial or accepting the reduction. Although the plaintiffs have assigned as error the court's failure to abide by the procedure set out in General Statutes § 52-228b, they do not claim they would have opted for a new trial if given a choice. Instead, the plaintiffs claim that they are prejudiced by the court's failure to file a memorandum of decision. See Practice Book § 322. We have before us, however, a transcript of the hearing on the motion to set aside the verdict, where the court has set forth the reasons for its decision. We will, therefore, overlook this procedural deficiency.

was imbedded in her chin and forehead as a result of the collision, and was still present at the time of trial more than three years later. Her face remained scabbed for two months after the collision and retained a pinkish tint for approximately six months. For approximately two weeks following the accident she could not see, and she was restricted to a liquid diet because she could not chew.

The jury could have found credible expert testimony that Dominic had suffered scarring of the forehead, upper lip, chin, right side of her face and right shoulder which would be permanent with only slight improvement even if corrective surgery were performed. The expert further testified that the dirt particles still imbedded in her face and causing hypopigmentation, a tatooing effect, could be removed by reconstructive surgery that would improve her appearance. Finally, the expert described the surgery, including the risks and benefits, preoperative and postoperative pain, the length of time of recovery,[3] and opined that Dominic should undergo the operation. The expert estimated the cost of the surgery at $1200.

The jury could have accepted Dominic's testimony that she had left her former employer in New York, where she worked as a secretary-receptionist for an insurance company, to search for work in Connecticut. She further testified that although she remained unemployed during her recuperative period, she was too embarrassed by her appearance to search actively for work. She eventually obtained a job as a secretary-receptionist twenty-nine weeks after the accident, at a wage of four dollars per hour—the same rate of pay

---

[3] Paula Moynahan, a plastic surgeon, the expert witness, estimated a recovery period of approximately three weeks, during which time the plaintiff would require facial dressing for seven to ten days. Moynahan also stated that Dominic would have to avoid exposure to the sun for three to six months following surgery.

she had previously earned. She further testified that she suffered extreme physical pain and anguish from her injuries and continued to suffer some discomfort, both physical and mental, as a result of the particles imbedded in her face. Finally, Dominic testified that she had incurred medical bills amounting to $94.25 resulting from the accident.

The jury was entitled to believe Campbell when he testified that he suffered three broken toes, had two fingernails ripped off, tore a hole in his left thumb, and hurt his knee as a result of the accident. He stated that he had been on crutches for one and one-half weeks following the collision, and was out of work totally for four weeks[4] and part time for three weeks. He further testified that he was employed as a logger earning approximately $250–$275 per week, and held a second job as a motorcycle mechanic, averaging $180 per week. He lost his second job, however, because his employer needed an immediate replacement.

Campbell also testified that his motorcycle was worth $2700 prior to the accident but only fifty dollars after the accident. He spent $1400 for parts to repair the motorcycle and repaired it himself.

Finally, Campbell testified that he had not regained full use of his thumb because it was imbedded with gravel, and that he still experienced some pain at the left thumb joint. He introduced into evidence his medical bills, which totalled $130, and an expert, testifying on his behalf, asserted that corrective surgery would cost $675. The expert also testified that a scar present at the left thumb joint would be permanent.

---

[4] The defendant points out that Campbell had replied to an interrogatory that he lost only one week of work. Unlike a judicial admission in a pleading, however, this prior inconsistent statement was not conclusive, and Campbell was not bound by it. General Statutes § 52-200; see *Ferreira* v. *Storms,* 159 Conn. 259, 262, 268 A.2d 657 (1970).

In ruling on the motion to set aside the verdict the trial judge stated that he "was shocked at the size of the verdict both because a figure had been put on [sic] by another judge which was substantially lower than mine, and this verdict was far, far in excess of what I thought the value of the case was." He stated further: "I looked at the specials, and if you look at the specials and under both instances what little scarring there was in James Campbell's case and what scarring there was in Debra's case were both correctable by some surgery, which is not that expensive, twelve hundred dollars in the case of Debra and substantially less in the case of James, but the specials were very low in this case. And, if they undergo the surgery, there is no consideration of permanency. The scarring was taken care of." The trial court concluded that "it becomes a question as to whether or not the jury was acting on the grounds of mistake. Because that is one of the criteria, that is the only one I can see that they acted on was mistake, mistake as to how to determine value, what is fair, just and reasonable."

"Where, as here, the trial judge disagrees with the verdict of the jury, a vexing question often arises. *Scarcello* v. *Greenwich,* 127 Conn. 464, 468, 17 A.2d 523 [1941]. When this occurs, we review the action of the judge in setting the verdict aside rather than that of the jury in rendering it. *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 224, 84 A. 928 [1912]." *Slabinski* v. *Dix,* 138 Conn. 625, 628, 88 A.2d 115 (1952), quoted in *Wochek* v. *Foley,* 193 Conn. 582, 585, 477 A.2d 1015 (1984). "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Briggs* v. *Becker,* 101

Conn. 62, 66, 124 A. 826 [1924]." *Slabinski* v. *Dix,* supra, 629. Unlike the trial court, we do not believe this "verdict so shocks the sense of justice as *to compel* the conclusion that the jury were influenced by . . . mistake." (Emphasis added.) Id.

In reaching an opposite conclusion, the trial court emphasized that "the specials were very low in this case." We have in the past, however, discountenanced using the special damages as a yardstick by which to measure the general damages: "That incurred medical expenses represent only a small percentage of the award for damages does not, ipso facto, invalidate the award. The award of damages for pain and suffering is peculiarly within the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice. *Camp* v. *Booth,* 160 Conn. 10, 12–13, 273 A.2d 714 (1970). Proper compensation cannot be computed by a mathematical formula, and there is no iron-clad rule for the assessment of damages. *Lee* v. *Lee,* 171 Conn. 1, 4, 368 A.2d 11 (1976). The process of evaluation is one of apportionment depending largely upon the sound discretion of the trier. *Kekac* v. *New York, N.H. & H. R. Co.,* 149 Conn. 731, 732, 179 A.2d 832 (1962)." *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982); see *Wochek* v. *Foley,* supra; *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983).

The trial court also claimed no permanent scarring would result from the injuries if both plaintiffs underwent the surgical procedures about which the experts testified. The trial court was clearly in error in concluding that the jury could not reasonably have found otherwise. Paula Moynahan, a plastic surgeon, testifying on behalf of Debra Dominic, stated that "she [Debra] has scars which could be dermabraded. The dermabrasion would result in a minimal improvement, but they would never disappear." Similarly, Novello E. Ruggiero, a

plastic surgeon testified that a scar on James Campbell's left thumb would remain after corrective surgery was completed.

Apart from the statements concerning the special damages and the scarring, the court's decision was also based on the settlement figure it had suggested to the parties at pretrial conference. The court stated that "this verdict was far, far in excess of what I thought the value of the case was."

The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. In considering a motion to set aside the verdict as excessive, the court should not act as the seventh juror with absolute veto power. "Whether the court would have reached a different [result] is not in itself decisive." *Lee* v. *Lee,* 171 Conn. 2, 4–5, 368 A.2d 11 (1976). The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict. See *Wochek* v. *Foley,* supra, 587. When reviewed under this test, we believe the evidence adequately supports the jury's verdict.

Had the jury credited Campbell's testimony, as they were entitled to do, they could have reasonably concluded that he had $130 in medical bills; that he suffered approximately $2080 in lost wages not including lost future wages resulting from the loss of his second job; that his property had been damaged to the extent of $2650; and that future medical bills he would incur to alleviate the pain he was still suffering would amount to $675, resulting in a total of $5535. When this figure is subtracted from the verdict of $8300 it appears that the jury awarded $2765 for pain and suffering—a figure that clearly "falls somewhere within the necessarily uncertain limits of fair and reasonable compensation

in the particular case . . . ." *Wochek* v. *Foley,* supra, 586, quoting *Slabinski* v. *Dix,* 138 Conn. 625, 629, 88 A.2d 115 (1952).

With respect to the $39,700 awarded Debra Dominic, the jury could have reasonably concluded that her medical damages, both past and prospective, were in excess of $1200 and that she had lost the capacity to earn $4640 during the twenty-nine weeks of recuperation. Subtracting these figures from the $39,700 leaves a total of $33,850, which the jury could have reasonably concluded would compensate Dominic for her past, present, and future pain and anguish concerning her injuries as well as the permanent scarring. " 'The award of damages for pain and suffering is peculiarly within the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice.' *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982); *Camp* v. *Booth,* 160 Conn. 10, 12–13, 273 A.2d 714 (1970). 'The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages.' *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1982); *Manning* v. *Michael,* supra." *Rosignol* v. *Hirnschal,* 191 Conn. 77, 79–80, 463 A.2d 240 (1983).

In this case, the plaintiff Dominic was thrown from a motorcycle headfirst onto the pavement. She suffered a concussion as well as severe lacerations to her forehead, chin, nose, and the right side of her face and shoulder. She remained scabbed for two months, and, thereafter, her face and shoulder retained a pinkish tint. She still had gravel imbedded in her chin and forehead, which was at the time of trial a source of continued pain. Although future surgery will improve her appearance, she will remain permanently scarred—a fact that causes her a great deal of anguish. Moreover, surgery will cause her to endure further pain and also impose

a risk of further complications. Under these circumstances, the jury's award of $39,700 clearly "falls within the necessarily uncertain limits of fair and just damages." *Herb* v. *Kerr,* supra.

There is error; the case is remanded with direction to reinstate the original judgment.

In this opinion the other judges concurred.