[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: POST VERDICT MOTIONS
The plaintiff instituted the present action seeking to recover damages for personal injuries sustained on August 9, 1989 while she was utilizing a walkalator at the store operated by the defendant, Caldor in Trumbull, Connecticut. A walkalator is an escalator type belt utilized to transport customers, and their purchases from one level of the store to another. The case was submitted to the jury with respect to the defendant Caldor, Inc. ("Caldor") and the Montgomery Elevator Company ("Montgomery"). The jury returned a verdict in favor of Montgomery and in favor of the plaintiff against Caldor in the amount of $359,154.28 of which $9,154.28 represents economic damages for loss of wages. CT Page 2141
The defendant Caldor has now filed a Motion to Set Aside the Verdict, a Motion for Judgment Notwithstanding the Verdict and a Motion for a Remittur. The motions filed by Caldor raise essentially two questions: 1) that the evidence was insufficient to sustain a verdict in favor of the plaintiff; and 2) the verdict was excessive.
The evidence indicated that on August 19, 1989 the plaintiff pushed a Caldor cart onto the walkalator. The cart became dislodged and rolled backwards into the plaintiff. The front of the cart became stuck on the side of the walklator [walkalator], the cart jammed and the plaintiff's foot caught underneath a metal bracket thereby causing her to sustain personal injuries. Prior to August 9, 1989, the Manager of Maintenance Facilities of Caldors and the Caldors' Risk Management Department advised upper management of Caldors that the walkalator was unsafe and that certain measures should be taken for the safety of customers. Nothing was done by Caldors with respect to such recommendations. By August 9, 1989 Caldors was also on notice that there had been numerous other incidents involving personal injuries, to customers while they were utilizing the walkalator. The court therefore finds that there is ample evidence to sustain a verdict in favor of the plaintiff and accordingly the plaintiff's Motion for a Judgment Notwithstanding the Verdict and its Motion to Set Aside the Verdict (insofar as they are based upon the sufficiency of the evidence to sustain a plaintiff's verdict) are denied.
The defendant's Motion For a Remittur, and its claim that the verdict is excessive, however, present a different question. The standard by which the court determines such claims has been stated inMather v. Griffin Hospital, 207 Conn. 125 (1988) at pp. 138-139 as follows:
 "Litigants have a constitutional right to have factual issues resolved by the jury . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is `one obviously immovable limitation on the legal discretion of the court to set aside a verdict since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men past upon by the jury and not by the court'. . . The amount of a damage award is a matter peculinary within the province of the trier of fact, in this case, the jury . . . The size of the verdict alone does not determine whether it is excessive. `The only practical test to apply to this verdict is whether the CT Page 2142 award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake, or corruption'. . . In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . ." (Citations omitted).
"The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. In considering a motion to set aside the verdict as excessive, the court should not act as a seventh juror with absolute veto power. `Whether the court would have reached a different (result) is not in itself decisive'. . . . The court's proper function is to determine whether the evidence, view in a light most favorable to the prevailing party, reasonably supports the jurys verdict . . ." Campbell v.Gould, 194 Conn. 35, 41 (1984) (Citations omitted).
On August 9, 1989, the plaintiff was utilizing the walkalator when the cart started to roll backwards. The cart then became stuck on the side of the walkalator where it became jammed and did not move but the walkalator continued moving. A metal bracket protruding from the side of one of the wheels continued to press into her foot causing a deep gash. A Caldor employee was able to pull the cart from the side of the walkalator thereby releasing the plaintiff's foot which was bleeding profusely. The plaintiff was then taken to the hospital by ambulance where she received emergency room treatment for a deep laceration. After the hospital personnel treated the wound, the plaintiff's wound started bleeding again requiring additional treatment. During this entire period the wound was painful. Toward the end of August, the plaintiff's foot developed an ulceration which — drained constantly and which required frequent changes in bandages and debridement. As a result of the ulceration, the plaintiff was required to go to physical therapy for whirlpool treatment five days a week for a period of eight weeks. The whirlpool treatment involved removing the bandages and putting the foot into the sterile whirlpool tub which was turned on for 20 minutes. In the beginning, the whirlpool was soothing but after 10 minutes it became painful because it was draining the wound.
Immediately upon release from the hospital, the plaintiff stayed with a friend for three nights and then obtained household help for a period of five days. Toward the end of October the plaintiff was told she could returned to work as a teacher and she actually returned to CT Page 2143 work on November 1, 1989. When she returned to work she was very leery because the children tended to step on the foot and when they did so it hurt. The foot remained swollen for quite a while and for approximately two years she was required to obtain different size shoes because of the swelling. At the time of the trial the foot swelled a little but was not extreme as it was in the beginning. The right half of the foot is numb and she does not have any feeling on the top of three of her toes. On the bottom of the toes there is a little bit of feeling but it is different than the other two toes and she does not have any feeling on the right side of the top of her foot. For the two year period prior to the time of trial, she experiences pain in the foot approximately once a month and there are times when it is unbearable. The pain is a dull ache and sometimes comes when the whether is changing or when she has been on her feet all day at school. She has to be very careful in the classroom because she is very leery about the foot. The plaintiff has a life expectancy approximately 26 years. Other than stated herein there was no evidence of any inability to carry on life's activities. At the present time there is a discoloration in the top of the plaintiff's foot.
The medical bills incurred by the plaintiff were not submitted into evidence and the reports of her treating physicians indicates that, a result of the neurological deficit, the plaintiff has a 7 percent permanent partial impairment of the lower extremity which translates into a 3 percent impairment of the whole person. According to the exhibits submitted, the last medical treatment received by the plaintiff for her injuries occurred on August 16, 1990 when she was seen for the purpose of evaluating her injury.
Based upon the standards herein before set forth the court does believe that the verdict as rendered in favor of the plaintiff was excessive. While the court instructed the jury that the theory of damages was to compensate the plaintiff and not to punish the defendant the court believes that the jury may have been effected by the fact that recommendations for safety precautions were made to Caldors and that Caldors declined to accept those recommendations. However no punitive damages were claimed nor did the court instruct the jury with respect to an award of punitive damages.
Accordingly the court orders a remittur in the amount of $100,000.00 and upon the failure of the plaintiff to remit the amount ordered by the court within twenty days of the issuance of notice of this decision the verdict shall be set aside and a new trial ordered.
The court has also reviewed the file and finds that on January 6, CT Page 2144 1993 the plaintiff filed an Offer of Judgment in the amount $85,000 which was not accepted by the defendant Caldor, Inc. The complaint was filed on July 11, 1991 and, pursuant to the provisions of General Statutes § 52-192a, the plaintiff is entitled to interest at the rate of 12% or the amount of the award of $259,194.00 from January 11, 1991 to the date of the filing of the remittur.
RUSH, JUDGE