ARTHUR J. MULLIGAN *v*. ROBERT RIOUX ET AL.
(14172)

FOTI, HEIMAN and HENNESSY, Js.

Argued May 26—decision released July 25, 1995

*Joseph A. La Bella,* with whom was *John F. Scully,* and, on the brief, *John T. Scully,* for the appellant (plaintiff).

*John B. Farley,* for the appellees (defendants).

HEIMAN, J. The plaintiff appeals from the judgment of the trial court setting aside the jury verdict in his favor as excessive as a matter of law. On appeal, the plaintiff claims that the trial court improperly set aside the verdict on the basis of an improper finding that the plaintiff did not produce sufficient evidence of lost earning capacity. We agree with the plaintiff and reverse the judgment of the trial court.

The following facts are necessary for the resolution of this appeal. In the fall of 1985, the plaintiff was finishing his seventeen year career as the director of the department of public works for the town of East Hartford. On October 28, 1985, four days before his planned retirement, the plaintiff was arrested and charged with violating an East Hartford town bidding ordinance.[1] The warrant that provided a basis for the plaintiff's arrest was prepared by the defendants, Detective Robert Rioux and Detective Gerald Myers,[2] and contained allegations that the plaintiff had continued a contract for lubrication services from Automatic Lubrication after the contract had terminated and without putting it out to bid. On November 19, 1985, the plaintiff was arrested for a second time, again on the basis of a warrant prepared by the defendants. The November 19 arrest resulted in twelve charges against the plaintiff for allegedly receiving bribes from Automatic Lubrication in the form of twelve rounds of golf at the Blackledge Country Club. The plaintiff's arrests were reported in various local newspapers and featured on local news on television.

On February 20, 1987, the plaintiff was acquitted of all charges against him. Thereafter, in September, 1987, the plaintiff instituted a civil action against the

---

[1] The plaintiff was charged specifically with acting in violation of chapter 10, article 2, § 10-5 of the code of ordinances of the town of East Hartford. That section provides in pertinent part: "All single purchases and contracts, other than professional services for which the requirement of competitive bidding would not be to the Town's advantage, in which the amount of expenditure is estimated to exceed Two Thousand Five Hundred Dollars ($2500), shall be made from or let by sealed bids. However, all purchases less than Two Thousand Five Hundred Dollars ($2500), but more than One Thousand Five Hundred Dollars ($1500), shall be substantiated by three (3) quotations which shall be held as a permanent record for audit and public inspection."

[2] The town of East Hartford was also named as a defendant in this case and conceded liability for the actions of Rioux and Myers. See General Statutes §§ 7-101a and 7-465.

defendants alleging malicious prosecution and a violation of his federal civil rights pursuant to 42 U.S.C. § 1983[3] based on both arrests. In his complaint, the plaintiff alleged that (1) the defendants had failed to investigate properly the charges relating to both arrests and had submitted an affidavit in support of both arrests that contained numerous false and inaccurate statements,[4] (2) the arrests were made without probable cause and with malice, and (3) as a result, the plaintiff had received "massive amounts of unfavorable publicity," greatly damaging his reputation, and had experienced humiliation, disgrace and mental anguish.

---

[3] Title 42 of the United States Code § 1983 (1988) provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[4] "The plaintiff alleged, inter alia, that in the affidavits in support of each arrest the defendants had: (1) falsely and inaccurately stated that the department's lubrication services contract with Automatic Lubrication (contract) was fixed for one year; (2) failed to disclose that the contract was a continuing contract that could be terminated by either the department or Automatic Lubrication; and (3) falsely and inaccurately stated that it was the plaintiff's responsibility to put the contract out to bid. Specifically with respect to the affidavit in support of the October 28 arrest, the plaintiff alleged that the defendants had: (1) provided a false and misleading account of the plaintiff's testimony at a meeting of the town council's audit and investigations committee, held for the purpose of investigating the criteria for running the lubrication service, by selectively editing the plaintiff's testimony and by failing to include the plaintiff's complete responses to the committee's questions; and (2) falsely and inaccurately stated that the plaintiff, having the responsibility to put the contract out to bid, had failed to do so by his own admission. Finally, with respect to the affidavit in support of the November 19 arrest, the plaintiff alleged that the defendants had failed to disclose that on eight of the twelve occasions that the plaintiff had played golf at Blackledge Country Club, his round had been neither charged to nor paid for by Automatic Lubrication." *Mulligan* v. *Rioux*, 229 Conn. 716, 723 n.11, 643 A.2d 1226 (1994).

At trial, the plaintiff introduced evidence on the issue of damages that his reputation had been destroyed as a result of the arrests and that he and his family had suffered both physically and mentally. The plaintiff's wife testified that the plaintiff had difficulty eating and sleeping after the arrests. Other evidence established that the plaintiff became withdrawn and mistrusting of people and that his self-esteem was severely damaged.

In addition to the alleged intangible injuries, the plaintiff introduced evidence concerning his claim for lost earning capacity. Evidence was introduced that the plaintiff had planned to work in the private sector after he retired from public office, but those plans collapsed due to his damaged reputation. He testified that his goal was to achieve financial security for himself and his wife and that he was willing to work as many hours as necessary to achieve that goal. The plaintiff introduced evidence that his annual salary with the department of public works was $48,000 plus benefits and that he could make more in the private sector. Specifically, he testified as to two employment opportunities that he considered pursuing after his retirement. The first was a company started by the plaintiff and two colleagues, James Fitzgerald and Eugene Paganetti. The plaintiff was not active in the corporation while in public office, but planned to join and act as a manufacturers representative upon his retirement. The business, however, collapsed after the arrests because of the damage to the plaintiff's reputation and credibility. The second was an opportunity with David Hanlon of DRJ Associates. Hanlon testified that he spoke with the plaintiff in the early fall of 1985 about representing engineers and contractors seeking business with Connecticut state and municipal governments. Hanlon testified that the plaintiff would have been ideal for the job because of his credibility and his valuable profes-

sional and political ties in Connecticut and that he could have earned between 4 and 8 percent of the company's gross sales in Connecticut, depending on the level of involvement that the plaintiff chose. Gross sales in Connecticut at the time were approximately $1.5 million.

At the close of the evidence, the trial court instructed the jury that if it found for the plaintiff it would have to consider the issue of damages. The jury was informed that "[d]amages for malicious prosecution are not limited to easily determined special damages such as attorney's fees or loss of time from work. . . . Damages are also designed to compensate for intangible injuries such as mental anguish, humiliation, embarrassment, mortification, shame, fear, and damage to reputation." The jury returned a general verdict for the plaintiff on all counts of his complaint and awarded him damages totaling $974,000.

The defendants moved the trial court to set aside the jury's verdict and for judgment notwithstanding the verdict, claiming, inter alia, that the defendants were protected from liability under the doctrine of qualified immunity and that the verdict was excessive as a matter of law. The trial court concluded that the defendants were entitled to qualified immunity, set aside the verdict of the jury, and rendered judgment for the defendants on all counts of the plaintiff's complaint.

The plaintiff, thereafter, appealed to this court and the appeal was transferred to the Supreme Court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Our Supreme Court reversed the judgment of the trial court, finding that the trial court applied the incorrect standard of qualified immunity to the plaintiff's common law claims and had improperly substituted its judgment for that of the jury on factual issues relating to the plaintiff's civil rights claim. *Mulligan* v. *Rioux*, 229 Conn. 716, 726–38, 643 A.2d 1226

(1994).[5] Although the Supreme Court's reversal reinstated the verdict, it remanded the case to the trial court for a determination of the defendants' claim that the verdict was excessive as a matter of law and based on inadmissible evidence of lost earning capacity. Id., 752.

On remand, the trial court found that the evidence before the jury on the issue of lost earning capacity established that the plaintiff intended to do only part-time work after his retirement from the department of public works. The trial court did not find the evidence presented by Hanlon to be inadmissible, but stated that Hanlon's testimony "did not provide a basis for the jury putting a dollar amount on lost earning capacity from that source." The trial court, therefore, concluded that the evidence produced by the plaintiff in support of his claim for lost earning capacity was too speculative to support the jury's verdict. The trial court set aside the verdict and ordered that a new hearing in damages be held. This appeal followed.

In determining whether to set aside a verdict, "[t]he size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . [T]he court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citation omitted; internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, 217 Conn. 671, 687, 587 A.2d 1014 (1991); see also *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988).

---

[5] The Supreme Court also rejected all of the defendants' alternative grounds for affirmance. *Mulligan* v. *Rioux*, supra, 229 Conn. 738-52.

On appeal, our standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is whether the trial court abused its discretion. *Mulligan* v. *Rioux*, supra, 229 Conn. 753; *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 14, 591 A.2d 1261 (1991). In conducting this review, we are, however, guided by the principle that the right to have the issue of damages determined by a jury is "one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Internal quotation marks omitted.) *Mather* v. *Griffin Hospital*, supra, 207 Conn. 138.

We agree with the plaintiff that the trial court abused its discretion in setting aside the verdict because the jury had before it sufficient evidence to determine the plaintiff's lost earning capacity when that evidence is viewed in the light most favorable to the plaintiff. See *Bartholomew* v. *Schweizer*, supra, 217 Conn. 687. In order to recover damages for lost earning capacity, the plaintiff was required to present sufficient evidence to "establish a reasonable probability that his injury did bring about a loss of earnings, and must afford a basis for a reasonable estimate by the trier . . . of the amount of that loss. . . . The evidence must be of such certainty as the nature of the particular case may permit. The plaintiff must lay a foundation which will enable the trier to make a fair and reasonable estimate." (Citation omitted; internal quotation marks omitted.) *Berndston* v. *Annino*, 177 Conn. 41, 46–47, 411 A.2d 36 (1979). The evidence produced by the plaintiff was sufficient for the jury to make such a determination.

Although the trial court found that the evidence established only that the plaintiff was willing to work

part-time after his retirement, the jury had before it evidence that the plaintiff wanted to achieve financial security for him and his wife and that he was willing to work as many hours as necessary to achieve that goal. "It was for the jury to evaluate the credibility of the witnesses and the weight to be accorded the evidence." *Mather* v. *Griffin Hospital*, supra, 207 Conn. 144. In addition, Hanlon's testimony gave the jury a range of compensation that the plaintiff could have earned if he had been able to take the job at DRJ Associates. It was within the province of the jury to credit the plaintiff's testimony regarding the amount of time he was willing to work and to consider that evidence with the testimony of Hanlon to arrive at a dollar amount representing a "fair and reasonable estimate" of lost earning capacity. See id. The jury also had before it evidence that the plaintiff was earning a salary of $48,000 per year, plus benefits, before his retirement. Such evidence could also properly be considered by the jury to arrive at an adequate measure of lost earning capacity. *Chase* v. *Fitzgerald*, 132 Conn. 461, 469, 45 A.2d 789 (1946). The jury, therefore, had sufficient evidence before it to make a fair and reasonable estimate of the plaintiff's damages for lost earning capacity and the trial court improperly set aside the jury's verdict on that basis.

We note also that even if the plaintiff were unable to establish damages for lost earning capacity, that would not have been sufficient to set aside the verdict. As we have said, the only practical test to apply when considering a motion to set aside a verdict as excessive as a matter of law is whether it "so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." *Bartholomew* v. *Schweizer*, supra, 217 Conn. 687. The trial court failed to apply this test when it set aside the verdict solely on the basis of its deter-

mination that the claim for damages for lost earning capacity was too speculative to support the jury's verdict. The trial court properly instructed the jury that an award of damages included not only special damages such as attorney's fees, loss of time from work and lost earning capacity, but also "intangible injuries such as mental anguish, humiliation, embarrassment, mortification, shame, fear, and damages to reputation." A failure to establish damages for lost earning capacity would not necessarily require that the jury's verdict be set aside as excessive because that is only one of many components making up the jury's award.

The judgment is reversed and the case is remanded with direction to reinstate the verdict of $974,000 in favor of the plaintiff and to render judgment in accordance with the verdict.

In this opinion the other judges concurred.