JOEANN JOHNSON *v.* NUBEL J. CHAVES ET AL.
(AC 23209)

Foti, Schaller and Mihalakos, Js.

Argued May 12—officially released July 29, 2003

*Frank A. Bailey,* for the appellant (plaintiff).

*Jane G. Beddall,* with whom was *Terence A. Zemetis,* for the appellees (defendants).

*Opinion*

MIHALAKOS, J. In this action to recover damages for personal injuries arising out of a motor vehicle collision, the plaintiff, Joeann Johnson, appeals from the trial court's order of remittitur. Because the defendants, Nubel J. Chaves and Rosana Alonso, admitted liability prior to trial, the case was tried to the jury on the issue of damages alone. The jury returned a verdict in favor of the plaintiff in the amount of $106,141.97, consisting of $6141.97 in economic damages and $100,000 in noneconomic damages. On appeal, the plaintiff claims that the court improperly ordered a $40,000 remittitur of the noneconomic damages awarded by the jury. We agree.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal.[1] At the conclusion of the one day trial of this matter on April 4, 2002, the jury returned the verdict of $6141.97 in economic damages and $100,000 in noneconomic damages.[2] Before accepting the verdict, the court temporar-

___

[1] Additional facts will be set forth as necessary.

[2] Prior to trial, the plaintiff offered to settle the claims against the defendants and to stipulate to a judgment, having filed offers of judgment in the amounts of $20,000 on December 11, 1998, and $18,777 on November 8, 1999. See General Statutes § 52-192a.

ily excused the jury and stated: "I allowed the verdict to be read, but did not accept it. It appears to be excessive." The court further stated: "I will accept the verdict and allow it to be ordered recorded, but however I would assume there will be a remittitur by the court at the appropriate time. . . . Let me say, for the record, at the present time, the verdict is shocking the conscience of the court." The jurors then were called back into the courtroom, at which time the court accepted and recorded the verdict and excused the jury.[3]

Thereafter, on April 12, 2002, the defendants filed motions for a remittitur and, in the alternative, to set aside the verdict and for a new trial on the issue of damages. The plaintiff filed an objection. On May 30, 2002, the court heard arguments on those postverdict motions and orally indicated that it intended to order a remittitur.[4] After the hearing, the court, via a notice card dated June 12, 2002, ordered that "$40,000 of noneconomic damages . . . be remitted within 60 days from the date of notice received by plaintiff's attorney; (see [General Statutes §] 52-216a);[5] or a new trial is ordered."

Thereafter, the plaintiff filed a motion for an articulation of the factual and legal grounds for the court's decision to grant the defendants' motion for remittitur,

[3] After excusing the jury, the court addressed the parties' counsel, stating: "[The verdict] appears to be excessive, so I assume both parties ought to sit down. Try to work out the controversy. Okay. . . . And file the appropriate motions. Whatever you think is appropriate."

[4] At the hearing, the court stated, inter alia: "Anybody wish to speak further then, because it's my intention to order remittitur, if I understand correctly. I believe the negotiations were somewhere around $18,000 if I have the right case . . . . W[ere] the negotiations, the offer of judgment in this case for $18,000 on the $20,000 [insurance] policy?"

[5] General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

and the court issued an articulation. In the articulation, the court stated that "the verdict shocked [its] conscience on the date it was accepted in open court" and directed the parties to "[s]ee [the] transcripts on accepting the verdict and all transcripts thereafter," including those from the hearing on the postverdict motions, for an explanation of its reasoning in granting the remittitur.[6]

The plaintiff did not accept the remittitur and instead, filed this appeal pursuant to General Statutes § 52-228a.[7] The plaintiff claims that the court abused its discretion and invaded the province of the jury in ordering the $40,000 remittitur of noneconomic damages.

"When a verdict is excessive as a matter of law, the amount of the remittitur, which the statutes, General Statutes §§ 52-216a and 52-228b, require to be ordered before a new trial may be had, rests largely within the discretion of the trial court. Its action is entitled to full support unless it abused its discretion. . . . In determining whether the trial court abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Alfano* v. *Ins. Center of Torrington*, 203 Conn. 607, 614, 525 A.2d 1338 (1987);

---

[6] Specifically, the court's articulation states: "(1) See transcripts on accepting the verdict and all transcripts thereafter for my reasons in re the remittitur;

"(2) The verdict shocked my conscience on the date it was accepted in open court with the reasons stated at that time in open court.

"At a hearing of the postjudgment motions, I explained why I believed that a remittitur was proper.

"Since I did not enter any judgment yet, the question of judgment interest remains open."

[7] General Statutes § 52-228a provides: "In any jury case where the court orders a decrease in the amount of the judgment or an increase in the amount of the judgment, the party aggrieved by the order of remittitur or additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided."

*Morales* v. *Pentec, Inc.*, 57 Conn. App. 419, 435, 749 A.2d 47 (2000).

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits." *Wichers* v. *Hatch*, 252 Conn. 174, 189, 745 A.2d 789 (2000). "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 536, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999). "Similarly, [t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 112, 663 A.2d 398 (1995).

Furthermore, "[t]he size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Ham* v. *Greene*, supra, 248 Conn. 536.

Thus, "[i]n ruling on the motion for remittitur, the trial court was obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby." (Internal quotation marks omitted.) *Eisenbach* v. *Downey*, 45 Conn. App. 165, 184, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997). A conclusion that the jury exercised merely poor judgment is an insufficient basis for ordering a remittitur.

See *Wochek* v. *Foley*, 193 Conn. 582, 587, 477 A.2d 1015 (1984). Proper compensation for noneconomic damages cannot be computed by a mathematical formula, and there is no precise rule for the assessment of damages. See *Campbell* v. *Gould*, 194 Conn. 35, 40, 478 A.2d 596 (1984). The plaintiff need not prove damages with mathematical exactitude; rather, the plaintiff must provide sufficient evidence for the trier to make a fair and reasonable estimate. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 65, 717 A.2d 77 (1998). A generous award of noneconomic damages should be sustained if it does not shock the sense of justice. *Campbell* v. *Gould*, supra, 40.

"The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. . . . [T]he court should not act as the seventh juror with absolute veto power. Whether the court would have reached a different [result] is not in itself decisive. . . . The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citation omitted; internal quotation mark omitted.) Id., 41. In determining whether the court abused its discretion, therefore, we must "examine the evidential basis of the verdict itself . . . ." *Wichers* v. *Hatch*, supra, 252 Conn. 188. "[T]he court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined." (Internal quotation marks omitted.) Id., 189.

In the present case, we do not believe that the jury's verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by mistake. In reaching the opposite conclusion, the trial judge emphasized that in light of his years of experience with jury verdicts, the amount of noneconomic damages awarded

by the jury appeared *to him* to be excessive.[8] The fact that the jury returns a verdict in excess of what the trial judge would have awarded, however, is an insufficient basis for ordering a remittitur. The court reasoned that the verdict likely was the product of mistake and suggested that two of its own mistakes might have caused what it deemed to be an excessive verdict. First, the court opined: "I think I made a mistake, in one sense, in moving the trial through too quickly on just one day." Second, the court proposed that it made a mistake in the instructions it gave to the jury because it did not make a distinction between a "partial permanent impairment and a disability . . . ."[9]

---

[8] Specifically, at the hearing on the postverdict motions, the court stated, inter alia:

"My problem is with the concept of the $100,000. I do not want to be the seventh juror, but from my experience in Stamford for all these years, I've been working with jurors for about forty-three years since the building opened . . . I was in the building aware of almost all jury verdicts coming in since the beginning up to the present day, and that's why I made the statement, on the record, that it did shock my conscience.

"It still shocks my conscience. I am not sure what the remittitur should be. I have no problem with the economic award. I was thinking of leaving that alone, but I guess the best thing to do would be either to set a remittitur of a figure that I will advise you of and then give you a reasonable time to accept it, and, if you don't accept it, then there will be a trial on a hearing in damages, once again, the whole amount. That is what I intend to do."

The court stated further: "I do remember specifically; I didn't have my glasses on. I thought it might have been $10,000, which would be reasonable. It would be low, but it would be [a] reasonable exercise of discretion. When I put my glasses, on I could see because I thought it seemed to have too many zeros and it came up to $100,000, which appears to be, in my judgment and my experience, at least shocking my conscience, as to being excessive. The amount of the excessiveness I know not at the present time. I will advise you on the answer, and if it's not accepted, I believe, at that point, it will be set down for a new trial."

[9] At the hearing on the postverdict motions, the court discussed its instructions to the jury as follows: "[M]y problem was and is in the doctor's report, whether the jury understood the distinction between 10 percent partial permanent impairment and a disability, and I do not, and I did not make any distinction in my charge on that point and I have been doing that since because I found out, at least from this case, in my judgment, that that has to be now clearly stated to the jury because the doctors aren't coming in, they're not being cross- examined.

We note that neither the plaintiff nor the defendants objected to the pace of the trial, and there were no exceptions taken to the jury instructions or any indication that the jury was confused by the instructions. Moreover, although the court suggested that it made some mistakes in presiding over the trial, the court did not analyze or explain what it was about the size of the verdict, when reviewed in light of the evidence, that compelled a conclusion that the jury was influenced by mistake. Without reviewing the verdict in light of its evidential underpinnings, the court could not properly determine that the verdict was so shocking to a sense of justice as to compel the conclusion that the jury was influenced by mistake. The court, therefore, failed to apply the proper standard in ordering the remittitur.

Furthermore, a review of the record and the facts reveal that an evidentiary basis reasonably supports the jury's verdict. As previously explained, the defendants admitted liability, and the case was tried as a hearing in damages. At trial, the plaintiff testified about the collision that occurred in 1998, the resulting injuries to her head, neck and back, and the manner in which her injuries continued to affect her life.[10] The plaintiff's daughter, Latesha Johnson, also testified about the plaintiff's injuries, their impact on the plaintiff's life and on the lives of the members of her family.[11] The jury

---

"I am now using, what would be the effect—and [what] I keep saying in my charges now, is, if I lost the two fingers in my hand, it probably would be a partial permanent disability, but it would not affect my way of life, whereas if I were a piano player or had to use my fingers at a computer all day, then it could be a substantial factor in my life."

[10] Specifically, the plaintiff testified that she has continuing pain in her neck and back, and that she can no longer play basketball with her children, exercise in a gym or do certain household tasks. She must be careful with lifting, bending and prolonged sitting, and she can no longer take lengthy car trips or go on amusement park rides, which has prevented her family from taking vacations.

[11] The plaintiff's daughter testified that the plaintiff can no longer cook or clean as she once did, she can no longer play basketball with her children or tolerate long car rides, and since the collision and including the time of the trial, the plaintiff's daughter has regularly given the plaintiff neck and back massages.

heard evidence that the plaintiff was treated by various physicians after the accident. The report of a chiropractic physician, Richard M. Fogel, who had treated the plaintiff intermittently after the accident, was introduced as an exhibit. The report indicated that the plaintiff had sustained a "5% permanent partial impairment of the cervical spine and a 5% permanent partial impairment of lumbar spine for a total of 10% permanent partial impairment," and, furthermore, that it was likely that the plaintiff would continue to require chiropractic or medical treatment into the future. At the time of the trial in 2002, the plaintiff was thirty-five years old. It was stipulated that the plaintiff had a life expectancy of 45.9 years at the time of trial.

Taking into consideration the plaintiff's evidence regarding her age, her continuing pain, her need for future treatment and her diminished ability to participate in activities with her family, which the jury was entitled to find credible, we conclude that the jury's award may have been generous, but that it nevertheless falls "somewhere within the necessarily uncertain limits of just damages . . . ." *Bartholomew* v. *Schweizer*, 217 Conn. 671, 687, 587 A.2d 1014 (1991); see generally *Campbell* v. *Gould*, supra, 194 Conn. 42. The award was not so large as to shock this court's sense of justice or to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.

We conclude that the court failed to apply the proper standard in ordering the remittitur and that because the amount of the verdict falls within "the necessarily uncertain limits" of fair and just damages, the court abused its discretion in ordering the remittitur.

The judgment is reversed with respect to the order of remittitur and the setting aside of the verdict only and the case is remanded with direction to reinstate the verdict against the defendants in the amount of

$106,141.97. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.