# GHASSAN SALEH *v.* RIBEIRO TRUCKING, LLC, ET AL.
## (AC 29825)

Beach, Robinson and Hennessy, Js.

Argued March 9—officially released November 10, 2009

*Richard C. Mahoney*, with whom were *Stephanie S. Baier* and *Allan M. Rothenberg*, for the appellant (plaintiff).

*Michael Feldman*, with whom was *Kasey Procko Burchman*, for the appellees (defendants).

*Opinion*

HENNESSY, J. The plaintiff, Ghassan Saleh, appeals from the judgment of the trial court, which set aside the jury verdict and ordered a new trial on the issue of damages after he refused to accept a court-ordered remittitur. The plaintiff's sole claim on appeal is that the court improperly ordered the remittitur in the absence of any reason to determine that the verdict was against the weight of the evidence, shocked the sense of justice or was based on partiality, prejudice, mistake or corruption. We reverse the judgment and remand the case to the trial court with direction to reinstate the jury verdict.

The following facts are relevant to the plaintiff's appeal. On the morning of March 28, 2003, the plaintiff, while driving on Interstate 91 in Hartford in his Nissan Altima, was rear-ended by a van that had been rear-ended by a tractor trailer truck. The tractor trailer was owned at that time by the defendant Ribeiro Trucking, LLC.[1] The force of the impact caused damage to the right rear bumper and trunk areas of the plaintiff's car. The plaintiff complained of neck, back and shoulder

---

[1] Also named as defendants were Cabbage Transport, Inc., Vincente Virola-Rodriguez and Oscar Quezada. For convenience, we refer to Ribeiro Trucking, LLC, as the defendant in this opinion.

pain at the scene of the incident and, as a result, was brought to Hartford Hospital by ambulance where X rays were taken of his neck and shoulder. The plaintiff then followed up with his regular physician, William Spector, at his first opportunity on April 9, 2003, and again on April 15, 2003. Spector prescribed pain and anti-inflammatory medication to the plaintiff and referred him to an orthopedist, Paul Filippini. The plaintiff testified that he returned to work as a car salesman a few days after the accident but was in pain all day long. The plaintiff saw Filippini for the first of twelve visits on April 29, 2003. At this appointment, Filippini prescribed physical therapy for the neck and back injuries in addition to medications. Physical therapy commenced on May 8, 2003, and ended on June 24, 2003, because it was not helpful to the plaintiff. On January 22, 2004, Filippini assessed the plaintiff's permanency of injury. He determined that the plaintiff had a 7.5 to 10 percent injury to the right shoulder and a 7.5 percent injury to the lumbar spine.

On January 19, 2005, the plaintiff saw Anthony Spinella, an orthopedic surgeon, to see if there was anything else that could be done for his injuries. He had an injection into his shoulder that eased the pain but did not improve its function. Spinella had assessed the plaintiff's permanency of injury at 10 percent for the shoulder, and an additional 5 percent for both the neck and back[2] for a total of 15 percent with respect to the accident.

At the time of trial, the plaintiff continued to take pain medications and muscle relaxers and was required to see Spector every two weeks for pain management. The plaintiff testified that he must take medication to

[2] Prior to the accident, the plaintiff had a preexisting 10 percent permanent injury to his back and neck from previous work and car accidents. The plaintiff testified that these previous injuries were not affecting him consistently and that he was able to work with only occasional minor discomfort.

work during the day to try to minimize discomfort and, to sleep at night, he also must take medication. He testified that he is in constant pain that he rates an eight on a scale from one to ten and can no longer live a normal life, including doing work around his house. The parties stipulated that the plaintiff's life expectancy is 15.8 years. The defendant admitted liability for the accident. The jury returned with a verdict of $12,132.31 in economic damages and $687,868 in noneconomic damages for a total of $700,000.31 in damages.

Following the verdict, counsel for the defense filed a motion for remittitur of the noneconomic damages as well as a separate motion to set aside the verdict. The plaintiff filed an objection to these motions. On April 4, 2008, the court issued a memorandum of decision, granting the motion for remittitur and ordering a remittitur of $503,608, thus reducing the award to $184,260, and rendered judgment in the total amount of $191,392.31.[3] In its memorandum of decision, the court found that the noneconomic award "does not fall within the necessarily uncertain limits of fair and reasonable compensation. Further, it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake." The court found that the permanency rating of the plaintiff's cervical spine, which prior to the accident was 10 percent, is now 15 percent, that the rating of the lumbar spine was 10 percent and is now 17.5 percent and that the rating of the shoulder is 10 percent for a total of 42.5 percent. The court found that based on the percentages of permanent partial disability and the plaintiff's stipulated life expectancy of 15.8 years, the jury reasonably could have awarded the plaintiff $74,260 for the injury. Regarding pain and suffering, the court found that the plaintiff

---

[3] The court further reduced the economic damages by $5000 due to collateral source payments to which the parties stipulated. As a result of this stipulation, the economic damages were reduced to $7132.31.

could be awarded compensation for pain and suffering only from the date of the accident until he was given a permanency rating in October, 2006. The court further found that for the first two months after the accident, the jury reasonably could have found that the plaintiff was entitled to $5000 a month, and then for the next forty months he was entitled to $2500 a month for a total pain and suffering award of $110,000.

The plaintiff filed his appeal on April 22, 2008. The defendant filed a motion for articulation or rectification on June 26, 2008, requesting that the court add to its judgment that, pursuant to General Statutes § 52-216a, "[should] the plaintiff agree to [the remittitur ordered by the court], a judgment will enter in the amount of $191,392.31. If the remittitur is not accepted, the defendant's motion to set aside the verdict will be granted, the jury award will be set aside and a new trial will be ordered." The court granted the motion on July 22, 2008.

Our analysis of the plaintiff's claim is guided by certain governing principles. "First, the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . Second, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . Third, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary

to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . The relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake." (Citations omitted; internal quotation marks omitted.) *Tomczuk* v. *Alvarez*, 184 Conn. 182, 187–88, 439 A.2d 935 (1981). Furthermore, "[t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of § 52-216a] rests solely within the discretion of the trial court. . . . [Consequently], the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 753, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 153 (1995).

"[A]lthough the trial court has a broad legal discretion in this area, it is not without its limits." *Wichers* v. *Hatch*, 252 Conn. 174, 189, 745 A.2d 789 (2000). "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 536, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999). "The award of damages for pain and suffering is peculiarly within the province of the trier [of fact]." *Manning* v. *Michael*, 188 Conn. 607, 616, 452 A.2d 1157 (1982). "The fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery . . . as long as there is a reasonable basis in the record for that recovery." (Citations omitted.) *Leabo* v. *Leninski*, 2 Conn. App. 715, 727, 484

A.2d 239 (1984), on appeal after remand, 9 Conn. App. 299, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987). Furthermore, "[t]he size of the verdict alone does not determine whether it is excessive." (Internal quotation marks omitted.) *Ham* v. *Greene*, supra, 536.

Thus, "[i]n ruling on the motion for remittitur, the trial court was obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby." (Internal quotation marks omitted.) *Eisenbach* v. *Downey*, 45 Conn. App. 165, 184, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997). "A conclusion that the jury exercised merely poor judgment is an insufficient basis for ordering a remittitur." *Johnson* v. *Chaves*, 78 Conn. App. 342, 346, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). "Proper compensation for noneconomic damages cannot be computed by a mathematical formula, and there is no precise rule for the assessment of damages. See *Campbell* v. *Gould*, 194 Conn. 35, 40, 478 A.2d 596 (1984). The plaintiff need not prove damages with mathematical exactitude; rather, the plaintiff must provide sufficient evidence for the trier to make a fair and reasonable estimate. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 65, 717 A.2d 77 (1998). A generous award of noneconomic damages should be sustained if it does not shock the sense of justice. *Campbell* v. *Gould*, supra, 40.

"The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. . . . [T]he court should not act as the seventh juror with absolute veto power. Whether the court would have reached a different [result] is not in itself decisive. . . . The court's proper function is to determine whether the

evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . Id., 41. In determining whether the court abused its discretion, therefore, we must examine the evidential basis of the verdict itself . . . . *Wichers* v. *Hatch,* supra, 252 Conn. 188. [T]he court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. . . . Id., 189." (Internal quotation marks omitted.) *Johnson* v. *Chaves,* supra, 78 Conn. App. 347.

The court did not find that the verdict was contrary to the law. The court instead found that the verdict shocks the conscience. In determining what the jury could have reasonably awarded the plaintiff, the court attempted to attach a mathematical formula to what should have been awarded. The court did not follow its directive to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict.

What is more problematic is the court's refusal to allow the plaintiff any compensation for his pain and suffering that occurred after he was given a permanency rating and for his future life expectancy. It was within the province of the jury, on the basis of the evidence that the plaintiff was in a constant state of pain almost five years after the accident, to award him damages for pain and suffering after the date permanency was found, which was October, 2006, according to the court. It was reasonable for the jury to award compensation for pain and suffering beyond the date of permanency because the testimony of the plaintiff was that about eighteen months after the date of permanency, he was still in a state of constant pain. The jury is allowed to determine the reliability of witnesses, and it clearly believed the testimony of the plaintiff. The determination of how much noneconomic damages should be awarded is particularly within the jury's duties, and without a plainly

excessive verdict based on the evidence, the verdict should stand. It was an abuse of the court's discretion to take away that determination from the jury when it is not clear that the jury did not follow the court's instructions and when it is not clear that the verdict was not based on the weight of the evidence.

This judgment is reversed and the case is remanded with direction to reinstate the jury verdict and to render judgment accordingly.

In this opinion ROBINSON, J., concurred.

BEACH, J., concurring. I concur in the well reasoned opinion of the majority and agree that the judgment of the trial court setting aside the jury's verdict should be reversed and the case remanded to the trial court with direction to reinstate the jury's verdict. I write separately to discuss the standard of review used in appeals from decisions granting or denying motions to set aside verdicts that are claimed to be excessive.

Our black letter law teaches us that the trial court is to accord great deference to the jury's verdict. The court should set aside a verdict, and perhaps suggest a remittitur, only when the jury could not reasonably have reached its verdict.[1] Stated alternatively, a verdict should be set aside only when the amount so shocks the conscience as to compel the conclusion that the verdict was due to partiality, prejudice or mistake.[2] See *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 661–62,

---

[1] See *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 661–62, 935 A.2d 1004 (2007) ("First, the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . Second, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant." [Internal quotation marks omitted.]).

[2] The "shocks the conscience" test is particularly appropriate in considering amounts awarded for noneconomic damages in personal injury cases. In situations in which damages may be found with more precision, a more narrow test may be appropriate.

935 A.2d 1004 (2007). If the verdict finds some basis in the evidence, as viewed in the light most favorable to sustaining the verdict, the trial court is not to set aside the verdict. See, e.g., *Campbell* v. *Gould*, 194 Conn. 35, 39–41, 478 A.2d 596 (1984); *Johnson* v. *Chaves*, 78 Conn. App. 342, 346–47, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Parties, after all, do have constitutionally protected rights, in these circumstances, to have damages decided by a jury rather than by the court.[3]

Appellate courts do not review the decision of the jury but rather review the action of the trial court in setting aside the verdict. See *Campbell* v. *Gould*, supra, 194 Conn. 39 ("Where . . . the trial judge disagrees with the verdict of the jury, a vexing question often arises. . . . When this occurs, we review the action of the judge in setting the verdict aside rather than that of the jury in rendering it." [Citation omitted; internal quotation marks omitted.]); but see *Johnson* v. *Chaves*, supra, 78 Conn. App. 347. The reviewing court is to defer to the discretion of the trial court because the trial court has viewed the witnesses and has assessed credibility. The trial court's exercise of discretion is not to be disturbed in the absence of clear abuse. See, e.g., *Wichers* v. *Hatch*, 252 Conn. 174, 187–89, 745 A.2d 789 (2000); *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995); *Gladu* v. *Sousa*, 52 Conn. App. 796, 799, 727 A.2d 1286 (1999), appeal dismissed, 252 Conn. 190, 745 A.2d 798 (2000).

The appellate review of whether the trial court has abused its discretion in its action on a motion to set

[3] Article first, § 19, of the Connecticut constitution, as amended by article four of the amendments, provides in relevant part: "The right of trial by jury shall remain inviolate . . . ." "[T]he right to a trial by jury encompasses the right to have the jury pass upon the factual issue of damages . . . ." (Citations omitted; internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, 217 Conn. 671, 683, 587 A.2d 1014 (1991).

aside a verdict typically includes an analysis of the evidence and the jury's verdict, with an eye toward determining whether the jury's verdict could have been based on the evidence. See, e.g., *Campbell* v. *Gould*, supra, 194 Conn. 35. The purpose of the appellate exercise has been to determine whether the jury's verdict was within the necessarily broad range of "fair and reasonable compensation"; id., 39; or whether the verdict was so excessive[4] as to compel the conclusion that it was reached impermissibly. See, e.g., id., 41–42; *Gladu* v. *Sousa*, supra, 52 Conn. App. 799–800.

It is not clear from the case law whether appellate review of excessiveness is plenary or rather whether the trial court's determination is entitled to deference. The reviewing court clearly ought to engage in an evidentiary analysis to determine whether the trial court abused its discretion in its action on the motion. It would appear reasonable to suggest that unless excessiveness or inadequacy, or lack of excessiveness or inadequacy, is crystal clear on the basis of an independent appellate review, then the action of the trial court should be affirmed if the trial court applied the appropriate standards.

In the case at hand, the majority of this court finds that the trial court did not appear to have reviewed all of the evidence with an eye toward sustaining the verdict. I agree with that assessment: the application of improper standards constitutes an abuse of discretion,[5] and this court need not defer to the trial court ruling. An independent analysis of the evidence does not yield the

[1] Some of the authority cited arises from cases in which it was claimed that the verdict should have been set aside on the ground of inadequacy rather than excessiveness. The analysis as to the standards to be applied by the trial court and the appellate court seems to be the same.

[5] For the purpose of this concurrence, I am considering only the trial court's action in setting aside the verdict. I am not considering the action setting the amount of the remittitur.

crystal clear conclusion that the jury found damages without a sufficient evidentiary basis. As stated by the majority, the jury presumably could have found that the plaintiff's life was wracked with pain, lack of sleep and the inability to perform many of the usual activities of daily living. Reversion to the jury's verdict, then, is not prohibited by our independent review of the evidence.[6] We do not have before us a situation in which the trial court has applied proper standards in setting aside a verdict, in which case any significant doubt regarding excessiveness would presumably be resolved by deferring to the trial court.

I respectfully concur in the majority opinion.

---

[6] There may be situations in which a trial court uses improper standards in setting aside a verdict, but the verdict is still clearly excessive. Suppose, for example, that in this case the jury had awarded $10 million. Even without deference to the trial court, this court presumably could, were the issue properly presented, uphold the trial court's judgment setting aside the verdict.