[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO SET ASIDE VERDICT
The jury in the above captioned matter returned a verdict of $900,000.00 in favor of the plaintiff broken down as follows: $450,000.00 for economic damages (medical bills, lost wages and loss of earning capacity) and $450,000.00 for non-economic damages (present and future physical and mental pain and suffering and permanency). The defendants timely filed a motion to set aside the jury verdict and for a new trial claiming, inter alia, that the jury verdict was based on speculation and guess with respect to the issue of loss of earning capacity. The defendants also filed a motion for remittitur. No interrogatories were requested by the parties nor submitted, sua sponte, by the court, to the jury.
The court reviews first the issue of loss of earning capacity. Loss of earning capacity is an economic damage. Medical bills and lost wages are also economic damages. The plaintiff claimed and there was evidence supporting the allegation that he incurred $11,847.00 in medical expenses. The plaintiff also claimed and there was evidence supporting the allegation that he suffered a loss of $143,776.12 in wages. These two elements of economic damages total $155,623.12. The jury's award for economic damage (which as was stated at the outset was limited to medical bills, lost wages and loss of earning capacity) totaled $450,000.00. Therefore, the maximum the plaintiff could recover for loss of earning capacity is $294,376.88. The court now reviews the jury award for loss of earning capacity to see if it can be sustained.
The court concludes that the verdict awarding damages for loss of earning capacity in the amount of $294,376.88 must be set aside. Dr. Lewis, an orthopedic surgeon called by the plaintiff, testified that the plaintiff was unable to return to his prior occupation as a school police officer. The defendants' attorney on cross-examination asked him the following question, "But based on the ratings that you have assigned him he can return to work as, say, an office person or some other — in some other function." Dr. Lewis responded, "Uh, sure. In the sense that one could assign some limitations of work." What kind of office job, what pay scale, what limitations the jury was given no guidance on. The burden of proof concerning loss of earning capacity is on the plaintiff. The possibility of other work was raised through the plaintiff's witness, yet the plaintiff provided no evidence upon which the jury could base an award for loss of earning capacity. There was no evidence as to whether the plaintiff's income from this office job would bring in more the same or less than the $40,000 per year that the jury could have found he earned before the accident.[1] The jury therefore had to speculate and/or guess what the loss of earning capacity, if any, should be. The motion to set aside the verdict is granted as to lost earning capacity in the amount of $294,376.88.
The court denies the motion for remittitur as it relates to CT Page 10142 medical bills and lost wages. The court next considers the motion for remittitur as it relates to the award of non-economic damage of $450,000.00. Non-economic damages in this case included past and future physical and mental pain and suffering as well as permanency. The case of Mather v. Griffin Hospital, 207 Conn. 125
(1988) at pp. 138-139 states the court' s considerations when determining whether a verdict is excessive.
 "Litigants have a constitutional right to have factual issues resolved by the jury. . . This
 right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is `one obviously immovable limitation on the legal discretion of the court to set aside a verdict since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men past upon by the jury and not by the court'. . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury . . . The size of the verdict alone does not determine whether it is excessive.' The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake, or corruption' . . . In considering motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . ." (Citations omitted).
"The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. In considering a motion to set aside the verdict as excessive, the court should not act as a seventh juror with absolute veto power. `Whether the court would have CT Page 10143 reached a different (result) is not in itself decisive'. . . The court's proper function is to determine whether the evidence, viewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict. . ." Campbell v. Gould,194 Conn. 35, 41 (1984) (Citations omitted). The plaintiff had been previously injured with similar injuries which had required hospitalization. He had recently returned to work and was putting in a full work week plus substantial overtime. In this accident he hit his head at the time of impact, which impact appeared to be significant, and lost consciousness. He had to be extracted from his vehicle and was moved to St. Vincent's Hospital by ambulance. He was subsequently released to go home. The plaintiff described the pain and suffering caused by injuries to his neck, back and knee. He described the changes to his life and the physical limitations he encountered from these same injuries and continues to encounter to this day. He complained of pain when he turns his neck the wrong way or in twisting his leg. His neck gets cricks and pains followed by pains in his head almost everyday. Additionally when asked to assess the condition of his back he stated that on some days he had to use two canes to walk with. He testified that the other day he had picked up a bag of groceries and the pain forced him to drop the groceries. On the day of testimony his neck and knee to his hip was bothering him. He testified that the pain "doesn't seem to want to go away like even with treatment." In addition, while the plaintiff's claims of permanency were not totally disabling, the court can not say as a matter of law that they were inconsistent with his testimony concerning pain and suffering.
The court may not have returned a verdict on non-economic damages in the amount found by this jury but does find that the verdict falls within the necessarily uncertain limits of just damages. The court does not find that it so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake, or corruption.
The judgment is however reduced as to earning capacity in the amount of $294,376.88. Judgment is therefore entered in the amount of $605,623.12.
LAWRENCE L. HAUSER, JUDGE