[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO SET ASIDE THE VERDICTS AND FOR REMITTITUR
The plaintiffs, four minor children by their parents and the parents individually, filed an action against Thames Valley CT Page 2468 Council for Community Action, Inc. (TVCCA) and Scott Dixon (Dixon) for injuries alleged to have been sustained as a result of the sexual molestation of the minor plaintiff's while enrolled at the Head Start program by Dixon, the van driver hired by TVCCA. The case was tried to the jury and, on August 11, 1999, plaintiffs' verdicts were returned for all of the plaintiffs. In answering the interrogatories submitted with the verdict forms, the jury found that all four children had been sexually assaulted by Dixon; that the sexual assault was a proximate cause of the minor plaintiffs' damages; that TVCCA failed to exercise reasonable care in hiring Dixon; that TVCCA failed to exercise reasonable care in supervising Dixon; that the negligence of TVCCA was a proximate cause of the minor plaintiffs' damages; that the sexual assault by Dixon was a proximate cause of medical expenses incurred in the past or to be incurred in the future by the parents and the children themselves (after their majority is reached); and that the negligence of TVCCA was a proximate cause of medical expenses incurred in the past or to be incurred in the future by the parents or the children themselves (after their majority is reached).
The jury awarded the following amounts:
Plaintiffs Economic Damages Noneconomic Damages
Nichole P. (child) $60,000 $75,000 Nichole P. (parents) $33,600
Jocelyn F. (child) $45,000 $45,000 Jocelyn F. (parents) $25,200
Lisa V. (child) $30,000 $35,000 Lisa V. (parents) $16,800
Amanda G. (child) $60,000 $65,000 Amanda G. (parent) $36,000
The total award of economic damages for the parents was $111,600. The total award of economic damages for the minor children was $195,000. The total award of noneconomic damages for the minor children was $220,000. The court ordered the verdicts accepted and recorded.
On August 20, 1999, the defendant TVCCA filed a motion for remittitur or to set aside the verdicts and a motion for judgment CT Page 2469 notwithstanding the verdicts. The defendant Dixon, also on August 20, 1999, filed a motion to set aside the verdicts, a motion for remittitur as to the minor children plaintiffs and a motion to set aside the verdicts as to the parent plaintiffs. A hearing on these motions was held on October 5, 1999.
In support of its claim that the verdicts should be set aside and judgment entered in favor of TVCCA notwithstanding the verdicts, TVCCA claims that the evidence was legally insufficient to support the plaintiffs' claims of negligent hiring or supervision. Further, TVCCA contends there was no evidence that the parent plaintiffs incurred any medical expenses. With respect to the minor children, TVCCA urges a remittitur of $195,000, claiming that the jury was left to speculate as to what, if any, economic damages these plaintiffs suffered.
Dixon moves to set aside the verdicts on the grounds that the evidence was legally insufficient to support: 1) the sexual assault claims; 2) the award of economic damages to the minor children plaintiff's and the parent plaintiff's; and 3) the award of noneconomic damages to the minor children plaintiffs. In the alternative, Dixon moves the court to order a remittitur in the amount of $195,000, representing the award of economic damages in favor of the minor children plaintiffs.
A verdict will be set aside and judgment directed only if the court finds that the jury could not reasonably and legally have reached their conclusion. Paige v. Saint Andrew's Roman CatholicChurch Corp. , 250 Conn. 14, 17 ___ A.2d ___ (1999); Mather v.Griffin Hospital, 207 Conn. 125, 130, 540 A.2d 666 (1988). The evidence, including reasonable inferences which may be drawn therefrom, must be considered in the light most favorable to the parties who were successful at trial. Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 529, 562 A.2d 1100
(1989); Bound Brook Association v. Norwalk, 198 Conn. 660, 667,504 A.2d 1047 (1986). "The test for determining the validity of the jury's verdict is whether the evidence, fairly and impartially considered, would be likely to induce in the minds of six persons of ordinary intelligence, attentively considering it and using common-sense logic, a reasonable belief that it is more probable than not that the facts in issue are true." Champagne, supra at 529, citing Rapuano v. Oder, 181 Conn. 515, 517,436 A.2d 21 (1980).
There was sufficient evidence presented at trial from which the CT Page 2470 jury could reasonably conclude that TVCCA was negligent in the hiring and supervision of Dixon as its employee. With respect to hiring, the jury heard testimony that only a few of Dixon's prior employers had been contacted for references. One of the former employers contacted indicated that he would not rehire Dixon. The jury could reasonably infer that, if a more thorough investigation into his employment background had been made, previous problems with Dixon being "too friendly" with children would have surfaced.
With respect to supervision, the jury could reasonably conclude that after the cook's report of Dixon's sexual misconduct with Nichole P., Dixon should not have been permitted to be alone with any of the children. There is testimony that at least one of the plaintiff children, who attended the TVCCA program and only had contact with Dixon after the incident with Nichole P., was transported in the van by him without another adult being present. Further, the jury could reasonably conclude that Dixon was not properly supervised when he was allowed to escort female children from the playground to the bathroom in the building, even though no one else was present in that area of the school and a complaint had previously been made by one of the plaintiff parents as to Dixon's unwanted attention to her child.
TVCCA also claims there is no evidence from which the jury could award economic damages to the parents or the minor children.[1] The court disagrees. Christine Diebel Hempsted, a therapist at the Child Guidance Clinic in 1989 and 1990, counseled two of the children. She testified that these plaintiffs need help and that the issues surrounding the abuse by Dixon will surface repeatedly (when they reach puberty, when they marry, when they have children, inter alia) for the rest of their lives.
Dr. Mantell, plaintiffs' expert who evaluated all four minor children plaintiffs, testified that Dixon's sexual abuse, with reasonable medical probability, will have a profound, long-term psychological impact on the thinking and emotions of the children and on their approach and reactions to relationships. At certain critical life junctures, such as puberty and adolescence, the children will be at great risk for the development of an assortment of mental, emotional and relationship disorders. Relationship problems, according to Dr. Mantell, will continue throughout their adult lives. A need for treatment and the disastrous consequences of problems left untreated were also CT Page 2471 mentioned. From this testimony, the jury could reasonably conclude that the children would require counseling at many critical life junctures given the serious nature of the enumerated problems. Dr. Mantell considered the children's injuries to be permanent. For these reasons, the jury could reasonably infer that the parent plaintiffs would incur expenses for treatment of their children at puberty and throughout adolescence and that the minor children plaintiffs would incur expenses for counseling throughout their adult lives at critical life junctures, including marriage, giving birth and throughout the raising of their own children.
Dixon's additional claim that the evidence was legally insufficient to support the children's claims that they were sexually assaulted by Dixon, because of the lack of specificity as to the time, place and nature of the alleged assault, is without merit. The children's statements describing the sexual abuse, as recounted by Christine Diebel Hempsted and Leanne Lane, could certainly have been deemed credible by the jury. The fact that they could not give definite dates or locations does not warrant a different conclusion. Even in criminal cases, the law does not require such specificity:
 As did our Supreme Court in State v. Evans, supra, 536, We "recognize that because the state has been unable to be more precise the defendant's presentation of his alibi defense may be more burdensome and difficult." We also recognize, however, that in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity.
State v. Saraceno, 15 Conn. App. 222, 237, 545 A.2d 1116 (1988).
Furthermore, there was testimony that very young children may not feel safe enough to discuss the sexual abuse immediately after the occurrence. For various reasons, they may be afraid to disclose it until some time later when they feel comfortable with their therapists. The jury could reasonably infer that, because these children were three and four years old at the time of the CT Page 2472 assaults, any inconsistencies were not significant or could easily be explained as the natural tendency of very young children under such circumstances gradually to reveal more detail about the abuse as their trust in their counselors increased.
For all of these reasons, the motions of TVCCA and Dixon to set aside the verdicts and order judgments in their favor notwithstanding the verdicts are denied.
With respect to the defendants' motions for remittitur as to the economic damage awards to the parent plaintiffs and minor children plaintiffs, the court must order a remittitur if it concludes that the verdicts are excessive as a matter of law. Upon failure of the party so ordered to remit the amount ordered by the court, the court must set aside the verdict and order a new trial. Conn. Gen. Stat. sec. 52-216a.
The amount of a damage award is a matter peculiarly within the province of the trier of fact. Gaudio v. Griffen Health ServicesCorp. , 249 Conn. 523, 551, ___A.2d (1999); Pisel v. StamfordHospital, 180 Conn. 314, 342, 430 A.2d 1 (1980). "Proper compensation for personal injuries cannot be computed by mathematical formula, and the law furnishes no precise rule for their assessment." Wochek v. Foley, 193 Conn. 582, 586,477 A.2d 1015 (1984). "The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." Gaudio, supra at 551; Mather v. GriffinHospital, 207 Conn. 125, 139, 540 A.2d 666 (1988). "In considering a motion to set aside the verdict as excessive, the court should not act as the seventh juror with absolute veto power. Whether the court would have reached a different result is not in itself decisive." Campbell v. Gould, 194 Conn. 35, 41,478 A.2d 596 (1984). This court must determine whether the evidence, viewed in a light most favorable to the plaintiffs, reasonably supports the jury's verdicts. Id., 41; Mather, supra at 139.
When reviewed under these parameters, the court finds that the evidence adequately supports the jury's verdicts. It was for the jury to evaluate the credibility of witnesses and the weight to be accorded the evidence. On the basis of the evidence, the jury could reasonably have found that the minor children's injuries CT Page 2473 were permanent and that these plaintiffs would, with reasonable medical certainty, suffer serious mental, emotional and relationship disorders at puberty and at other critical life junctures throughout adulthood.
The amount of damages in any given case is dependent upon the facts and circumstances of that case. Although the parents had not incurred any past medical expenses, the jury could reasonably conclude that the children would need counseling at puberty and throughout adolescence. At the time of trial, the children were twelve and thirteen years of age. Their parents, therefore, would have six and five years of expenses, respectively, for treatment necessitated by Dixon's abuse. The jury heard testimony that a therapist charges $80 per hour and a psychiatrist charges $300 per hour for professional services. Based upon the reasonable inferences that the plaintiff children's injuries would require treatment as they entered adolescence and that the cost of treatment would range between $80 and $300 per hour, the economic damages awarded to the parent plaintiffs were certainly "somewhere within the necessarily uncertain limits of just damages." Gaudio, supra at 551.
Section 912 of the Second Restatement of Torts provides as follows: "One to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit." Under the comment section, it is noted that "an injured person [should] not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered. Particularly is this true in situations where there can not be any real equivalence between the harm and compensation in money, as in case of emotional disturbance, or where the harm is of such a nature as necessarily to prevent anything approximating accuracy of proof, as when anticipated profits of a business have been prevented." Furthermore, according to our Supreme Court, "future medical expenses do not require the same degree of certainty as past medical expenses." Marchetti v. Ramirez,240 Conn. 49, 55, 688 A.2d 1325 (1997).
In the present case, the jury heard testimony that, with reasonable medical certainty, all four children will suffer serious problems at puberty and into adolescence. Such injuries will necessitate counseling. Because these children were violated CT Page 2474 at such an early age, it is impossible to determine with total precision how much counseling they will need at this particular juncture in their lives. It is reasonably probable that such treatment will be needed but whether a particular child will need counseling with a therapist for four hours a week for five years, or psychiatric treatment for four hours a week for eight months in one year and two hours a week for four months the next year, cannot be determined with accuracy given the nature of the injuries sustained.
The jury awarded $33,600 to Mr. and Mrs. P. and $36,000 to Ms. G., which were the largest amounts for economic damages to parents. Their children are now twelve years of age and have just entered a critical stage in their lives which, the jury could reasonably conclude, will require treatment. If counseling is necessary for each child over six years, the yearly amount would be approximately $6,000 per child. At the psychiatrist's rate, this translates into twenty hours of counseling each year. The jury could reasonably infer that each child would require a combination of psychiatric and psychological counseling. It is not unreasonable, given the serious injuries sustained by these children, to conclude that the twelve year old children would need, for example, 12-15 hours of psychiatric counseling and 25-30 hours of psychological counseling per year. Such an award does not "shock the conscience." The award, "although generous, [does] not cross the line of impermissibility. . . ." Samose v.Hammer-Passero Norwalk Chiropractic Group. P.C.,24 Conn. App. 99, 108-109, 586 A.2d 614 (1991), cert. denied, 218 Conn. 903,588 A.2d 1079 (1991).
With respect to the awards for economic damages allocated to the minor children, there was testimony that the injuries are permanent in nature. Included with the plaintiffs' exhibits for jury review was a life expectancy table. From the time these children reach eighteen and throughout adulthood, they will experience serious relationship problems, with reasonable medical certainty, at critical life junctures. Thus, at the time of marriage, the birth of their own children and the time their children reach the age they were when they were sexually molested, these plaintiffs will experience additional mental and emotional problems necessitating a cost to them for treatment. The greatest amount awarded for economic damages was $60,000, a sum awarded to both Nichole P. and Amanda G. Given the life expectancy for each child and the number of serious problems and CT Page 2475 critical stages in their lives identified by Dr. Mantell, these awards for counseling expenses were not unreasonable. "While the amount of the verdict is substantial, in a relative sense it is no more substantial than the plaintiffs injury." Pisel v.Stamford Hospital, 180 Conn. 314, 344, 430 A.2d 1 (1980).
Accordingly, the defendants' motions for remittitur as to the economic damages awarded to the parent plaintiffs and the minor children plaintiffs are denied.
Koletsky, J.